991 F.2d 796
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert L. BOYD, Defendant-Appellant.
 No. 92-5841.
 United States Court of Appeals, Sixth Circuit.
 March 26, 1993.
 
 Before: KENNEDY, MARTIN and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Robert Leon Boyd appeals his convictions on three counts of possessing with intent to distribute and distributing cocaine base in violation of 21 U.S.C. § 841(a)(1) and one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). On appeal, the issues are (1) whether the district court erred in not granting Boyd's pretrial motion to suppress evidence of a statement made to police allegedly in violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and (2) whether sufficient evidence exists to support Boyd's convictions on all four counts. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On October 16, 1991, Officer Dunn, a Chattanooga, Tennessee, narcotics officer, received information from a confidential informant that persons, including Robert Leon Boyd, also known as "Kojak," would be in a room at the Gateway Motel in Chattanooga and in the possession of narcotics. The police officers obtained a search warrant for the motel room and set up surveillance nearby. The officers knew Boyd both from prior arrests and as a previous confidential informant. They expected Boyd to arrive in a white Rivergate Inn van, and when the white van arrived at the motel parking lot, the eight police officers involved in the operation split up. Some approached a blue van, also parked in the lot and believed to be involved in the drug transaction, and others, including Officer Dunn, approached the white van. As the officers approached the white van, Officer Dunn saw that Boyd was the only person in the van and that he was apparently drawing a gun on Officer Bowman. Dunn drew his own weapon and shouted something like: "Police. Don't try it." The van then drove toward Dunn, who fired three shots at the van before it veered away and drove off.
 
 
 3
 Officer Bowman testified that he drove toward the white van in order to block any attempted escape. When Bowman was about ten feet from the van, he saw the driver, whom he identified as Boyd, raise a gun and point it through the window directly at him. He further testified that Boyd had, in the past, acted as if he were going to cooperate with the police, although he had never done so. Bowman stated further that, when it came to arrest situations, informants were always disclosed to the officers involved and that he had never arrested someone only to later learn they were actually trying to cooperate with the police. Bowman further testified that Boyd was not attempting to cooperate in this situation.
 
 
 4
 Randy Poland, a Chattanooga police officer, was on duty in the East Lake area of Chattanooga when he heard a dispatch concerning the white van driven by Boyd, who was reportedly dressed in red. He testified that he located Boyd in the East Lake housing projects and arrested him. Officer Poland discovered a loaded magazine for an automatic pistol in Boyd's left hand, but he did not locate a gun at the scene of the arrest.
 
 
 5
 Sergeant Mark Ralston searched the white van and found a 10 mm. cartridge similar to those found in the magazine taken from Boyd. At the police station, Ralston read Boyd his Miranda rights from a preprinted form and asked him if he understood them. Boyd replied that he did and agreed to talk to Ralston. Ralston testified that they discussed the incident with the van, and Boyd stated that he was only trying to get away. He further stated that he had hidden the gun at the East Lake Courts and did not want to give a tape-recorded statement until he had recovered the gun. As Boyd offered to take Ralston to find the gun, Ralston obtained a car and they went to meet Boyd's brother. After Boyd spoke with his brother, other police officers took the brother to East Lake Courts to retrieve the gun. However, after a short time, the brother returned and reported to Ralston that the individual holding the gun was not at home. He told Ralston he would page him as soon as he knew where the gun was. Ralston never received a page and never recovered the gun. He did not question Boyd further.
 
 
 6
 An agent of the Bureau of Alcohol, Tobacco, and Firearms testified that the magazine found in defendant's possession belonged to a Colt pistol manufactured in Connecticut. The ammunition was manufactured in Idaho. Boyd's prior felony judgments were entered into evidence.
 
 
 7
 Undercover officer Greg Cruise testified that he bought rocks of crack cocaine from Boyd while he was released on bond on December 11, 1991, January 6, 1992, and January 8, 1992. Cruise was working with an informant at the time of the purchases, but was not aware of any attempts defendant may have made in the past to help the police. Finally, two forensic chemists with the Tennessee Bureau of Investigation testified that they had analyzed the rocks purchased by Cruise and determined that they contained cocaine base. The defense did not call any witnesses.
 
 B.
 
 8
 Prior to trial, defendant Boyd moved to suppress the statement concerning the gun that he had made to Sergeant Ralston on the ground that he had refused to sign a form stating that he was waiving his Miranda rights, and, therefore, Ralston's questioning violated those rights. During a brief hearing, it was determined that defendant had made two statements to the police but that only the second was being challenged. (The first statement, that defendant possessed only the magazine and did not have a gun, was made to Officer Dunn at the East Lake projects after Dunn had read him his Miranda rights. J.A. 70. Defendant conceded the admissibility of this statement. J.A. 57.) The government offered proof that defendant was read his rights, stated that he understood them, and agreed to talk to the police, even though he declined to sign a waiver. When asked what he did with the gun, defendant stated that he did not want to talk further until the gun was recovered, and he offered to lead police to it. The court postponed its ruling on defendant's motion until testimony was presented at trial as to whether he understood his rights when they were read to him. When defense counsel objected at the appropriate time during the testimony, the court ruled that defendant understood his rights, that he waived those rights by talking to police, and that the statement was admissible.
 
 
 9
 Defendant Boyd went to trial on April 20, 1992, and on the same day, the jury found him guilty of all four counts in the indictment returned on January 14, 1992. Defendant was sentenced on June 15, 1992, to 240 months imprisonment on the three drug counts, 240 months on count four (to run concurrently), five years supervised release, and a $200 special assessment. His total offense level of 33 and criminal history category of V were based upon his status as an armed career criminal. The district court sustained defendant Boyd's sole objection to the presentence report, and Boyd does not challenge his sentence.
 
 II.
 A.
 
 10
 Defendant Boyd first argues that the district court erred in denying his motion to suppress. As a rule, the government may not introduce a defendant's incriminating statement unless it first proves that there was a voluntary, knowing, and intelligent waiver of the accused's Miranda rights. See Miranda, 384 U.S. at 475. The government must show the waiver by a preponderance of the evidence. See Colorado v. Connelly, 479 U.S. 157, 168 (1986). The inquiry as to whether there was a valid waiver has two dimensions:
 
 
 11
 First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.
 
 
 12
 Moran v. Burbine, 475 U.S. 412, 421 (1986). Whether the waiver in fact occurred is determined by the totality of the circumstances. Id. This court reviews a district court's findings of fact for clear error and its conclusions of law de novo. United States v. Sangineto-Miranda, 859 F.2d 1501, 1512 (6th Cir.1988); see United States v. Brown, 557 F.2d 541, 547 (6th Cir.1977).
 
 
 13
 From the totality of the circumstances in this case, it is clear that defendant knowingly waived his right to remain silent, despite his refusal to sign the waiver form. See North Carolina v. Butler, 441 U.S. 369, 375-76 and 375 n. 5 (1979) (implicit waiver may be sufficient; courts of appeals have unanimously rejected the argument that refusal to sign a waiver form precludes a finding of waiver); United States v. Shaw, 894 F.2d 689, 691-92 (5th Cir.), cert. denied, 489 U.S. 828 (1990); United States v. Stark, 609 F.2d 271, 273 (6th Cir.1979) (per curiam). The key question is whether the statement was obtained through police coercion. Shaw, 894 F.2d at 691-92. Defendant's case is similar to that described in United States v. Caulton, 498 F.2d 412 (6th Cir.) (per curiam), cert. denied, 419 U.S. 898 (1974). The defendant in that case, like Boyd, claimed no abusive or coercive tactics by the police. Instead, he relied primarily on the fact that he did not sign any waiver form. This court rejected that argument stating, "[T]he refusal to sign a written waiver, standing alone, does not render inadmissible statements or evidence voluntarily given after full warnings." Id. at 413 (quoting United States v. Vaughn, 496 F.2d 622 (6th Cir.1974)).
 
 
 14
 Undisputed testimony presented at trial established that defendant Boyd was read his Miranda rights prior to his questioning by Ralston. This was the second time since his arrest that he had been read them. Defendant told Ralston that he understood his rights and had "no problem" talking to him. After discussing the incident with the van and telling Ralston that he had hidden the gun, defendant indicated that he did not want to give a tape-recorded statement concerning the gun until he had led police to it. Questioning then ceased while defendant was taken to meet his brother in the unsuccessful attempt to retrieve the gun. The gun was never recovered and there was no further questioning. There is absolutely no indication from the testimony presented at trial that coercion was used to obtain defendant's statement that he had hidden the gun. It is also noteworthy that defendant had substantial previous experience with the criminal justice system. This is a circumstance that may be taken into account in determining whether or not a waiver was knowing and voluntary. See United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir.1990), cert. denied, 112 S.Ct. 101 (1991); United States v. Cruz Jimenez, 894 F.2d 1, 8 (1st Cir.1990). Accordingly, the district court did not err in finding that defendant voluntarily waived his Miranda rights and that his statements were properly admitted into evidence.
 
 B.
 
 15
 Defendant Boyd's second argument as to insufficiency of the evidence is also without merit because, when the evidence is considered in the light most favorable to the government, a reasonable jury could find defendant guilty beyond a reasonable doubt. See United States v. Powell, 469 U.S. 57, 67 (1984); United States v. Allen, 954 F.2d 1160, 1169 (6th Cir.1992). On appeal, justifiable inferences from the evidence must be considered in the light most favorable to the government. See Glasser v. United States, 315 U.S. 60, 80 (1942); Allen, 954 F.2d at 1169. Circumstantial evidence may support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. See United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.), cert. denied, 476 U.S. 1123 (1986); United States v. Eisner, 533 F.2d 987, 989 (6th Cir.), cert. denied, 429 U.S. 919 (1976).
 
 
 16
 The record shows that the government presented evidence sufficient to convict defendant Boyd of the three counts of distributing cocaine base. Officer Cruise testified that on the three occasions named in the counts he bought rocks of crack cocaine from the defendant whom he positively identified. Two forensic chemists testified that the rocks tested positive for cocaine base. This testimony was undisputed. Defendant's conclusory assertion on appeal that "it is evident that his defense at trial was that he was acting as a police informant, as he had in the past, when he made the alleged drug sales to an undercover officer of the Chattanooga Police" (Appellant's Brief at 8-9) is completely unsupported by the record. In each case where defense counsel questioned a police officer as to whether defendant was a confidential informant, the officer answered in the negative. One officer stated that defendant had acted as an informant in the past, J.A. 78, 81-83, and another stated that, although defendant had at one time "acted like he was going to" cooperate with the police, he had never done so. Trial Tr. 42-43. The undercover officer who made the drug purchases had no knowledge that defendant was acting as an informant, J.A. 125-27, and defendant presented no evidence that he was acting as an informant at any time. The jury apparently found the police officers to be credible witnesses. Matters of witness credibility are solely within the jury's province and are not reweighed on appeal. See United States v. Schultz, 855 F.2d 1217, 1221 (6th Cir.1988). Thus, there was ample direct evidence that defendant was guilty of counts one through three.
 
 
 17
 There was also sufficient evidence for a rational jury to find defendant Boyd guilty of being a felon in possession of a firearm. The government must prove three essential elements in order to sustain a conviction under 18 U.S.C. § 922(g)(1), namely, (1) prior conviction in any court of a crime punishable by imprisonment for a term exceeding one year, (2) knowing possession of a firearm, and (3) possession in or affecting interstate commerce.
 
 
 18
 Defendant does not challenge the sufficiency of the evidence presented to establish the first and third elements. Instead, he argues on appeal that because the van incident occurred during the early morning hours while it was still dark and because of heightened emotions during the attempted drug bust, the officers' identification of him and their testimony that he held a firearm is suspect (Appellant's Brief at 9-10). Unfortunately for defendant, the incident did not occur in the early morning, but in late afternoon at about 5:30 or 6:00 p.m. J.A. 72. More than one officer positively identified the defendant as the driver of the white van, and Officer Poland, who arrested Boyd shortly afterward, was able to identify him in part by the red clothing he was reported to be wearing. Moreover, Officer Bowman testified that Boyd pointed a gun directly at him, and Boyd was arrested with the magazine from an automatic pistol in his hand. From this combination of direct and circumstantial evidence, the jury could easily have found that defendant was in knowing possession of a firearm on October 16, 1991.
 
 III.
 
 19
 For the reasons stated, the judgment of the district court is AFFIRMED.