**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Hollis Wesley SHAW,**
**Defendant–Appellant.**

No. 89–3547
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Feb. 2, 1990.

Roma A. Kent, Asst. Federal Public Defender, John T. Mulvehill, Federal Public Defender, New Orleans, La., for defendant-appellant.

Robert J. Boitmann, Robert Hamilton, Asst. U.S. Attys., John Volz, U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before HIGGINBOTHAM, DAVIS, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Defendant Hollis Wesley Shaw appeals his conviction on two counts of armed bank robbery under 18 U.S.C. § 2113(a), (d). Finding no error, we affirm.

## I.

Shaw was indicted for two bank robberies. On March 8, 1989, an armed black male robbed the Peoples Bank and Trust of Poydras, Louisiana. The man was wearing a ski mask, jeans, and a stonewashed jacket. He gave bank teller Geraldine Meyers a bag and ordered her to put the money into it; the bank lost approximately $1,858. Following the robbery, teller Louise Martinez told authorities that she recognized the robber's voice.

The second robbery occurred on March 10, 1989, when an armed black man robbed the First National Bank of St. Bernard, also wearing a ski mask, jeans, and a blue-jean jacket. One of the tellers at this bank, Denise Madary, stated that she saw the man in the parking lot before he donned the mask. An hour later, she was shown a black-and-white photograph spread of six men, but she did not identify any of them. She then was shown a color photographic lineup. She selected the photograph of Shaw but stated that she was not absolutely certain and requested the opportunity to see him in person.

Meanwhile, Federal Bureau of Investigation (FBI) agents and the St. Bernard Sheriff's Office began their investigation of the March 10 robbery. They obtained information relating to taxicab calls in the area. FBI agents went to the residence of Derrick Mercadel, who told the agents that he

had called a taxi for a man who was later identified as Shaw. When the taxi did not respond after about twenty five minutes, Shaw left, then returned a few minutes later asking about a white bag he had lost.

While the agents were discussing these events with Mercadel, Shaw appeared. Mercadel identified Shaw as the man who had come to his home. Shaw matched the description of the bank robber and was placed under arrest. A small automatic weapon was found in Shaw's back pocket.

An FBI agent testified that Shaw was advised of his *Miranda* rights. The agent stated that Shaw was again read his rights after being placed into the government vehicle. Because Shaw was handcuffed, he was unable to sign the waiver form.

Shaw admitted that he had robbed the First National Bank and told agents where he had discarded clothing. At one of the locations, a ski mask was discovered. Shaw was then taken to the bank, where the teller identified him as the man she had seen in the parking lot just before the robbery.

Shaw was taken to the St. Bernard police headquarters and again advised of his rights. Shaw refused to sign the form, stating that he could not read or write. He then admitted to committing both robberies.

Shaw was indicted on two counts of armed bank robbery. He moved to suppress evidence of the out-of-court identifications on the ground that the procedures employed were so suggestive as to create a likelihood of irreparable misidentification. The court denied this motion, holding that there was no such likelihood.

The court noted that Madary had been watching the robber intently before he entered the bank out of concern for her new car, that her prior description was accurate, that she was ninety-five percent certain even before the show-up, and that only a few hours had passed. The court also found that the photo lineup was not suggestive, because there was no discernible difference in clarity or brightness of the photos.

Shaw also moved to suppress the confession and statements on the ground that they were illegally obtained in violation of the fifth and sixth amendments. The court denied the motion, holding that the government had met its burden of showing that the confessions were voluntary and not coercively obtained.

Shaw was convicted by a jury on both counts and sentenced to concurrent prison terms of sixty three months, five years' supervised release, restitution in the amount of $3,814, and special assessments of $50 per count for a total of $100.

## II.

### A.

■ Shaw contends that his statements detailing the bank robberies and his confession to both bank robberies were obtained in violation of his fifth amendment right against self-incrimination and his sixth amendment right to counsel. When reviewing a ruling from a pretrial suppression hearing, "[t]his Court must give credence to the credibility choices and findings of fact of the district court unless clearly erroneous." *United States v. Raymer*, 876 F.2d 383, 386 (5th Cir.) (citing *United States v. Watson*, 591 F.2d 1058, 1061 (5th Cir.), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2414, 60 L.Ed.2d 1070 (1979)), *cert. denied*, —— U.S. ——, 110 S.Ct. 198, 107 L.Ed.2d 152 (1989). A finding is clearly erroneous when the reviewing court is left with the "definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). The issue of voluntariness, however, is a legal question requiring the reviewing court to make an independent determination. *Raymer*, 876 F.2d at 386 (citations omitted).

■ The district court found that *Miranda* warnings were given and that the confession was not coercively obtained. The court rejected Shaw's contention that he was threatened in any way. Properly,

the focus was on the absence of police coercion. *Colorado v. Connelly,* 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986). FBI Special Agent Lester Y. Tamashiro testified that Shaw was read his rights by Agent Fisher while being frisked and again in the car by Tamashiro himself. FBI Special Agent James Henderson testified that Shaw was again given his rights by Maginty in the government vehicle and also at the sheriff's office.

Shaw stated that he received only one warning, which was not complete in that he was only told of the right to remain silent. He described an atmosphere of coercion and intimidation.

The choice between the two stories involved a credibility determination on the part of the district court. In this case, it simply cannot be said that there is a "definite and firm conviction that a mistake has been committed." Further, the refusal on Shaw's part to sign the waiver of rights form is not dispositive, as such refusal "does not automatically render inadmissible all further statements of the defendant." *United States v. McDaniel,* 463 F.2d 129, 135 (5th Cir.1972), *cert. denied,* 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041 (1973) (quoting *United States v. Phelps,* 443 F.2d 246, 248 (5th Cir.1971)). The finding of voluntariness is adequately supported by the record.

### B.

Shaw argues that any identification made by Madary was the result of suggestive procedures used by government agents or the sheriff's office. He contends that the in-court identification was tainted by these procedures, which created a likelihood of irreparable misidentification.

■ In reviewing the district court's ruling on the motion to suppress based upon live testimony, the trial court's factual findings must be accepted unless clearly erroneous or influenced by an incorrect view of the law. *United States v. Maldonado,* 735 F.2d 809, 814 (5th Cir.1984). The evidence must be viewed in the light most favorable to the prevailing party, except if such view is not consistent with the trial court's findings or is clearly erroneous considering the evidence as a whole. *Id.*

■ The admissibility of identification evidence is governed by a two-step analysis. *United States v. Henderson,* 489 F.2d 802, 850 (5th Cir.1973). The first step is a determination of whether the identification procedure was impermissibly suggestive. The second step involves inquiry into

> whether under the totality of the circumstances the suggestiveness leads to a substantial likelihood of irreparable misidentification.... Under this analysis 'reliability is the linchpin in determining the admissibility of identification testimony.' *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

*Passman v. Blackburn,* 652 F.2d 559, 569 (5th Cir. Unit A Aug.1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1722, 72 L.Ed.2d 141 (1982).

■ In this case, the court disagreed with Shaw's contention that his photograph was clearer than the others and stated that they all appeared to be equally bright. We perceive no error in this finding. Having found that the photo array was not impermissibly suggestive, the inquiry as to this procedure ends.

■ Shaw also argues that the one-man show-up was fatally defective. It is evident that the procedure was impermissibly suggestive. Shaw was handcuffed and was the only suspect presented; he was taken out of the FBI vehicle and shown to the witness at the scene of the crime. The inquiry then turns to whether there is a substantial likelihood of irreparable misidentification. It is at this step that Shaw's argument fails.

■ The analytical process discussed in *United States v. Atkins,* 698 F.2d 711, 713 (5th Cir.1983), governing determinations of reliability, includes the court's attention to the following:

> (1) the opportunity of the witness to view the criminal, (2) the witness's degree of attention, (3) the accuracy of the description, (4) the witness's level of cer-

tainty, (5) the elapsed time between the crime and the identification, and (6) the corrupting influence of the suggestive identification itself. [Citations omitted.] Madary stated that she was watching Shaw attentively in the parking lot because he was near her new car. She also saw a portion of his face during the robbery. Her description to the police was accurate. She was absolutely certain that Shaw was the perpetrator after seeing him in person and was even ninety-five percent certain just from seeing his photograph in the array. Madary viewed the photographs only one hour after the robbery, and the one-on-one show-up occurred just a few hours later.

"We do not have here the passage of weeks or months between the crime and the viewing...." *Manson*, 432 U.S. at 116, 97 S.Ct. at 2254–55. The corrupting influence is minimal, since Madary was already practically certain when she selected Shaw's photograph, before the suggestive show-up. Under the "totality of the circumstances" test, the reliability of the identification procedure was not so compromised as to require exclusion from trial.

### C.

■ Shaw argues that the jury received inadequate instruction on the presumption of innocence and the government's burden of proof. He claims that the pattern charge inadequately advised the jury as to its mandate for acquittal in the event that the government failed to prove his guilt beyond a reasonable doubt. Several similar challenges recently have been made to the pattern jury instruction. In *United States v. Walker*, 861 F.2d 810, 812–13 (5th Cir.1988) (per curiam), we criticized the instruction but held that the charge was adequate, taken as a whole. *Id.* at 814. The instruction also had been upheld in *United States v. Castro*, 874 F.2d 230, 233–34 (5th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 138, 107 L.Ed.2d 97 (1989), and *United States v. Stewart*, 879 F.2d 1268, 1271 (5th

Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 256, 107 L.Ed.2d 205 (1989).

In each of those cases, no objection was made to the instruction. Here, counsel objected to the instruction.[1] However, we hold that the pattern charge is adequate, even in the face of an objection, although we reiterate that the instruction set forth in *Walker*, and requested in this case, is preferable.

AFFIRMED.

---

1. The pattern instruction that was given is the same one set forth in *Walker*, 861 F.2d at 811 n. 3. The instruction requested by Shaw's attorney is the one suggested by the *Walker* panel. *See id.* at 813–14 n. 14.