**Leonel Torres HERRERA,
Petitioner–Appellant,**

v.

**James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.**

**No. 89–6071.**

United States Court of Appeals,
Fifth Circuit.

June 25, 1990.

Will Gray, Houston, Tex., for petitioner-appellant.

Andrea L. March, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before KING, JOHNSON and JONES, Circuit Judges.

JOHNSON, Circuit Judge:

A jury found Leonel Torres Herrera guilty of capital murder. Punishment was assessed at death. Herrera is now before this Court on appeal from the district court's denial of his writ of habeas corpus.

Concluding that the existing law warrants no other result, we affirm the district court's denial of habeas relief.

## I. PROCEDURAL HISTORY

A jury found Herrera guilty of the capital murder of Enrique Carrisalez, a peace officer acting in the course of his official duties. *See* Tex.Penal Code Ann. 19.03 (Vernon 1977). After the jury answered the special issues affirmatively, punishment was assessed at death. *See* Tex.Code Crim.Pro. art. 37.071 (Vernon 1981). The Texas Court of Criminal Appeals affirmed the conviction on direct appeal. The United States Supreme Court refused to grant a writ of certiorari.

The state court issued a warrant of execution, ordering Herrera to be executed by lethal injection before sunrise on August 16, 1985. On July 2, 1985, Herrera filed an application for State writ of habeas corpus pursuant to Tex.Code Crim.Proc.Ann. art. 11.07. Relief was denied. Herrera then filed a federal petition for writ of habeas corpus and motion for stay of execution in the United States District Court for the Southern District of Texas. The federal district court granted the unopposed stay on August 12, 1985; the federal district court ultimately granted the State's motion for summary judgment and denied Herrera federal habeas relief.

Herrera has appealed the judgment of the federal district court. Herrera argues that the district court erred in concluding that two pre-trial photographic identifications by two individuals were not impermissibly suggestive so as to deny Herrera due process. The district court granted a certificate of probable cause on October 19, 1989. With Herrera's appeal properly before us, we turn now to address his contentions.

## II. FACTUAL BACKGROUND

On the evening of September 29, 1981, at approximately 10:40 p.m., the body of Texas Department of Public Safety Officer David Rucker was discovered 6.2 miles east of Los Fresnos, Texas. Rucker was killed by a gunshot wound to the head. There

were no witnesses to the shooting. Herrera's social security card, however, was discovered near the body. Ten minutes later, Los Fresnos police officer Enrique Carrisalez stopped a speeder traveling west on the road from where Rucker's body was found. Carrisalez parked on the shoulder with his headlights illuminating the driver's side of the speeding car. Carrisalez radioed the driver's license plate number to the dispatcher.

As Carrisalez approached the car which had been stopped, the driver of that car stepped toward Carrisalez and fired one or more shots. Carrisalez was shot in the chest. He died nine days later from the wound.

Civilian Enrique Hernandez was accompanying Carrisalez on the night of the shooting. Hernandez witnessed the shots fired on Carrisalez, and immediately took cover on the seat of the patrol car. When Hernandez looked over the dashboard again, he saw Carrisalez fire four shots as the car which had been stopped sped away. Hernandez radioed in a description of the suspect's automobile. Almost immediately afterwards, Hernandez was interviewed by police officers. A few hours later, on the morning of September 30, Hernandez gave a statement to Texas Ranger Bruce Casteel. The police then proceeded to obtain an arrest warrant for the as yet unidentified suspect.

Also on the morning of September 30, Hernandez was called to the Harlingen police station and shown a display of six photographs. Hernandez picked out three photographs and said that anyone of them could have been the killer; a photograph of Hernandez was among those selected.

The next afternoon, two officers went to the hospital room of Officer Carrisalez. The officers showed Carrisalez one photograph of Herrera and asked Carrisalez three times if he could identify it. Although Carrisalez was unable to speak, he nodded his head, thereby identifying Herrera as the assailant. Later in the day, Hernandez was shown the same photograph. He too positively identified Herr-

era as the gunman. The photograph was a mug shot that carried the notation "Edinburg Police Department."

On October 4, Herrera was apprehended. Two days later, Hernandez picked Herrera's photograph from a second photo lineup. The photograph of Herrera used in this instance was not the same photograph earlier shown to both Carrisalez and Hernandez.

Finally, on October 24, Hernandez picked Herrera out of a five person live lineup.

## III. DISCUSSION

Herrera now asserts that he has been denied due process of law because the pretrial identification procedures were impermissibly suggestive and created a substantial likelihood of misidentification such that the in-court identification was unduly tainted. We disagree, and affirm.

■ In *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court announced the now familiar rule that a conviction based on an eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. As this Court has acknowledged, the admissibility of identification evidence is governed by a two-step analysis.[1] Initially, a determination must be made as to whether the identification procedure was impermissibly suggestive. Next, the court must determine whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification. *See, United States v. Shaw*, 894 F.2d 689, 692 (5th Cir.1990).

*Hernandez:*

■ The district court found that the procedures employed by the authorities in showing a single photograph of the suspect to Hernandez were suggestive, but not im-

---

1. *United States v. Henderson*, 489 F.2d 802 (5th Cir.1973).

permissibly so.[2] Even if we were to assume, however, that the procedures utilized were, in fact, impermissibly suggestive, after examining the totality of the circumstances we cannot conclude that a substantial likelihood of misidentification exists.

In *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Supreme Court indicated that "reliability is the linchpin" when examining the totality of the circumstances to "determin[e] the admissibility of identification testimony." *Id.* at 114, 97 S.Ct. at 2253. Even an impermissibly suggestive identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability. The Supreme Court has set forth several factors to be considered when reviewing the reliability of a pre-trial identification. These factors include

(1) the opportunity of the witness to view the criminal, (2) the witness's degree of attention, (3) the accuracy of the description, (4) the witness's level of certainty (5) the elapsed time between the crime and the identification, and (6) the

corrupting influence of the suggestive identification itself.

*Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *see also United States v. Atkins,* 698 F.2d 711, 713 (5th Cir.1983).

In the instant case, the district court did not err by concluding that these factors culminate in a finding of reliability. The district court properly considered the findings of fact made by the state district court and relied upon by the Texas Court of Criminal Appeals. These findings are entitled to a presumption of correctness which has not been rebutted by the petitioner in the instant case. *See Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982).[3]

The district court, applying the Supreme Court's analysis from *Biggers,* ultimately concluded that, under the totality of the circumstances, there was no substantial likelihood of misidentification. Based on our examination of the record and the district court's application of the *Biggers* factors, we conclude that the district court did not err in its assessment of the totality of the circumstances.

**2.** We agree with the district court's conclusion that the identification procedure was suggestive. Because of our conclusion as to the totality of the circumstances, we need not determine whether the district court erred in concluding that, although the procedure employed was suggestive, it was not impermissibly suggestive. Without ruling on the issue, however, we do note that the following occurrences, as outlined by the district court, present extreme circumstances, and we take this opportunity to reiterate that the showing of a single photograph is an inherently suggestive method of identification.

Only hours after the shooting had occurred [Hernandez] was unable to identify Petitioner from a photographic display consisting of six pictures. He did, however, choose three pictures from the display, one of which was Petitioner. What occurred between this initial uncertainty and the eventual certitude Hernandez expressed at the second photographic display, the live lineup, and the trial was the display to Hernandez of Petitioner's picture uncomplicated by any accompanying array.

Under normal circumstances, this Court would not hesitate [sic] to find this procedure impermissibly suggestive. The Supreme Court and this Circuit have repeatedly con-

demned the showing of a single photograph as one of the most suggestive methods of identification. ... However, because of the circumstances existing at the time the single photograph was shown, it cannot be said that this procedure was impermissible. [T]he Supreme Court [has] justified a suggestive identification procedure [where a serious felony has been committed, the perpetrator is at large, and the officials needed to act swiftly.]

[In the instant case, it] was crucial for the law enforcement officers to act quickly. Moreover, there is no indication that the police did or said anything suggestive while showing the picture to Hernandez. Granted this procedure is less than ideal, but under the circumstances the Court does not find it impermissibly suggestive.

District Court Opinion at 9.

**3.** The determination of whether the pretrial identification procedures utilized in the instant case violated Herrera's due process rights is a mixed question of law and fact. However, as the district court correctly noted, the questions of fact which underlie the ultimate conclusion as to the constitutionality of the procedures come within the purview of § 2254 and are entitled to the statutory presumption of correctness.

The district court realized that Hernandez was approximately fifteen feet from the suspect and that Hernandez testified that he had about fourteen seconds during which he was looking directly at the assailant. Based on this testimony, we cannot say that the district court erred by concluding that Hernandez had ample time to get a clear view of the suspect. This is especially true where, although the shooting took place after dark, the headlights and emergency lights of the patrol car were on and the cars were positioned so that the entire left side of the assailant's car was illuminated.

The district court also agreed with the state court's finding that Hernandez could be expected to pay a higher degree of attention to details than a passer-by. Considering that Hernandez, although a civilian, had received special army training in spotting and identifying enemy aircraft and had been riding with police officers for several years, we are in agreement with the district court's assessment of Hernandez' powers of observation and recall. Similarly, we see no reason to disturb the district court's assessment of the accuracy of the description and Hernandez' level of certainty.[4] The federal district court based its conclusion that the description was accurate on findings relied on by the Texas Court of Criminal Appeals. District Court Opinion at 12. These findings by the district court are further supported by the following language by the Texas Court of Criminal Appeals:

We find that Hernandez' special training in the army permitted him to make a very accurate identification of appellant. The lighting was very good; there is not indication from the record that Hernandez' description of appellant was anything but accurate. There were no distractions and Hernandez, who had been riding with police officers for several years, could be expected to observe the suspect with more precision than a lay person.

*Herrera v. State,* 682 S.W.2d 313, 319 (Tex. Crim.App.1984).

Finally, the district court noted that only hours had passed between the incident and Hernandez' first description of the gunman. Only a few days later, Hernandez positively identified Herrera as the gunman from a photograph. The passage of time between the shooting and the various identifications does not, as the district court correctly concluded, undermine the reliability of the identification.

An examination of the *Biggers* factors, indicates that any suggestiveness in the procedures employed in obtaining Hernandez's identification of Herrera was outweighed by the reliability of that identification. As the district court noted, "while identification arising from single photograph displays are to be viewed with suspicion, there are sufficient indicia of reliability to find that, considering the totality of the circumstances, the showing of the photograph did not create a substantial likelihood of misidentification." District Court Opinion at 13. In light of the record in the instant case, we cannot conclude that the district court erred in making this assessment. No due process violation has been demonstrated; the identification evidence was properly before the jury.

*Carrisalez:*

Herrera attacks the district court's refusal to exclude Officer Carrisalez' statement of identification on two grounds. First, Herrera argues that the procedures were impermissibly suggestive and created a substantial likelihood of misidentification. Second, Herrera argues that the statement of identification was improperly admitted under the dying declaration exception to the hearsay rule. We address these contentions in turn.

 The district court concluded that, under the circumstances, the identification

4. The district court noted that there was no indication from the record that Hernandez was unsure of his identification. This statement by the district court is further supported by Hernandez's testimony that, when he chose Herrera from the five man lineup on October 24, he was absolutely certain of his choice and had recognized Herrera as the gunman as soon as he saw him.

procedures utilized by the state officials were not impermissibly suggestive. Based on the record in the instant case, we cannot conclude that the district court erred. While the showing of a single photograph to the officer while he was in a hospital bed is unquestionably suggestive, in light of the exigent circumstances present in the instant case, the procedure was not impermissibly suggestive.

In *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the Supreme Court indicated that all of the circumstances must be considered when examining whether the action taken violates the suspect's constitutional rights. In *Stovall*, the Supreme Court held that transporting a defendant to a hospital to conduct a one-person lineup was not impermissibly suggestive when considered in light of all the circumstances. Like the circumstances in the instant case, the witness was in the hospital and in serious condition. Further, the perpetrator was known to be armed and still at large; the authorities were faced with the need to apprehend the suspect as quickly as possible. Additionally, in the instant case, the totality of the circumstances points to a finding of reliability. As the Texas Court of Criminal Appeals noted, there was no indication that the police exerted any pressure on Carrisalez or in any way indicated that the subject of the photo was in custody. Further, the nurse testified that, upon viewing the photo, Carrisalez became agitated and remained so even after the officials left. *See Herrera v. State*, 682 S.W.2d at 319. When making the identification, Carrisalez was alert; he had not been given sedatives for 22 hours prior to the showing. Finally, Carrisalez had sufficient time to view the attacker at the time of the shooting.

Considering the exigent circumstances present in the instant case, the district court did not err by concluding that, although suggestive, the procedures employed were not impermissibly so. However, even if we were to conclude that the district court erred in that regard, the totality of the circumstances indicates that the identification by Carrisalez was reliable and did not offend due process.

 Similarly, we conclude that the district court did not err by denying Herrera's challenge to the admission of the identification testimony as a dying declaration. Herrera's argument that the statement should have been excluded is based on his assertion that the state failed to lay the proper predicate for its admission under what is now Tex.R.Crim.Evid. 804(b)(2).[5] The district court properly denied relief on this ground, noting that this Circuit resists challenges to evidentiary matters by collateral habeas corpus review. As we have stated before, the "mere violation of evidentiary rules by the state trial court does not in itself invoke habeas corpus relief, but only where the violation of the state's evidentiary rules results in a denial of fundamental fairness should habeas be granted." *Anderson v. Maggio*, 555 F.2d 447, 451 (5th Cir.1977); *see also Woods v. Estelle*, 547 F.2d 269, 271 (5th Cir.), *cert. denied*, 434 U.S. 902, 98 S.Ct. 297, 54 L.Ed.2d 188 (1977).

In the instant case, even if we were to reevaluate a state evidentiary finding, the result would be no different since there is no indication that material, fundamental error has been made. In light of the record in the instant case, considerations of fundamental fairness require us to hold that the district court has not committed reversible error. The State's case hinged on neither Hernandez nor Carrisalez identification. Substantial other evidence exists to support the verdict[6] and ensure that consider-

---

5. In order to be admissible under the dying declaration exception to the rule against hearsay, the statement must meet several requirements including being made while the declarant is conscious of impending death and believes he has no hope of recovery. The state court found that this requirement had been met, but Herrera challenges this finding.

6. For example, both a letter written by Herrera on the back of several envelopes in which he essentially admits to the killing of both officers and a positive identification of Herrera's car which was streaked with blood matching Officer Rucker's blood type were admitted to the jury. *See Herrera v. State*, 682 S.W.2d at 320 for a more complete discussion of the evidence admitted at trial.

**950**

ations of fundamental fairness have been served. Any error in the admission of Car-risalez statement was harmless.

## IV. CONCLUSION

The district court did not err in denying habeas relief. For the reasons stated herein, we affirm, and any existent stay of execution heretofore issued by the district court is vacated.