United States Court of Appeals
Fifth Circuit

**F I L E D**

April 6, 2005

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 04-40425

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

DONALD PAUL GUIDRY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas

_____

Before HIGGINBOTHAM, SMITH, and
BENAVIDES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Donald Guidry challenges his conviction of violating 18 U.S.C. § 922(g)(1), the felon in possession of a firearm statute. Finding no reversible error, we affirm.

I.

The conviction is based on the robbery of a barbeque restaurant during the course of which the owner was struck in the back of the head with a weapon, and the employees and customers were bound with duct tape and rope and left in the bathroom. After the robbers left, the victims freed themselves and called police. Based on the fact that the witnesses heard the robbers refer to one of their own as "D.P.," and on the description of one of the perpetrators as having a distinctive "teardrop"

tattoo by his left eye, the investigating officers believed that Guidry was involved. They immediately dispatched officers to a house where Guidry was known to be.

When the officers arrived, Guidry fled into the house but was subsequently detained. After the owner gave consent to search the house, officers discovered a shotgun, pistol, clothes matching those that the assailant called "D.P." wore during the robbery, and a box containing one-dollar bills that had a strong smell of barbeque smoke. Guidry and four other black male residents of the house were seized by the police and taken back to the crime scene.

Upon returning to the restaurant, the police lined up the five suspects in handcuffs, against the patrol cars outside the window of the restaurant. Guidry was identified as an assailant by two eyewitnesses, Allyssa Plunkett and Joseph Gabbard. Gabbard and another witness, James Lewis, identified the pistol recovered from the house as the one Guidry had used in the robbery. Guidry's fingerprints were identified on the pieces of duct tape that had been used to bind the witnesses.

A jury convicted Guidry of violating § 922-(g)(1) based on the evidence that he possessed the firearm during the course of the aforementioned robbery, a stipulation that he had previously been convicted of a qualifying felony, and evidence that the gun had been manufactured in Europe. Guidry was sentenced to 120 months' imprisonment under the sentencing guidelines.[1]

II.

Guidry argues that the evidence was insufficient to support a conviction. We must decide whether a rational trier of fact could have found that each element of the charged criminal offense was proven beyond a reasonable doubt. *See United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998). We consider all the evidence in a light most favorable to the government, drawing all inferences and credibility choices in its favor. *Id.*

To establish a violation of § 922(g)(1), the government has the burden to prove three elements beyond a reasonable doubt

(1) that the defendant previously had been convicted of a felony;

(2) that he possessed a firearm; and

(3) that the firearm traveled in or affected interstate commerce.

*United States v. Daugherty*, 264 F.3d 513, 515 (5th Cir. 2001). Guidry contests the sufficiency of the evidence only as to the second

---

[1](...continued)
another felony offense. U.S.S.G. §§ 2K2.1(b)(5), 2X1.1(a), 2B3.1(a). The PSR recommended a two-level increase because a victim sustained bodily injury. *Id.* § 2B3.1(b)(3)(A). Guidry was further assessed a six-level increase because he used a firearm to hit a victim in the head, and an additional two-level increase because the victims were physically restrained. Id.. § 2B3.1(b)(4)(B). The total offense level was 30, and with a criminal history of V, the resulting range was 151-188 months. Guidry did not file an objection to the PSR, and the district court adopted its recommendations. Because 18 U.S.C. § 924(a)(2) provides a statutory maximum of 10 years, Guidry was sentenced to 120 months in prison.

---

[1] Guidry's presentence report ("PSR") established a base offense level of 20 based on the fact that the firearm was possessed in connection with
(continued...)

and third elements. After reviewing the evidence, we find both arguments legally untenable.

The government produced sufficient evidence from which a reasonable jury could conclude, beyond a reasonable doubt, that Guidry possessed a firearm. The government presented the testimony of two eyewitnesses who identified Guidry as a robber, one of whom identified the pistol that was recovered from Guidry's home as the one that was used during the robbery.

Guidry asserts that we should closely scrutinize the identification of the weapon because it was made by a "frightened witness" undergoing traumatic "extreme circumstances of the robbery." It is not our role, however, under our standard of review for sufficiency of the evidence, to second-guess the determinations of the jury as to the credibility of the evidence. *See Ortega Reyna*, 148 F.3d at 543. Assuming, as we must, that the eyewitness identification of the weapon was credible, there was sufficient evidence of weapon possession to prove the second element of § 922(g)(1).[2]

Similarly, the government produced sufficient evidence from which a jury could conclude beyond a reasonable doubt that the firearm possessed by Guidry affected interstate commerce. The government provided evidence that the firearm was manufactured in Belgium, so it necessarily must have traveled in interstate commerce to get into Guidry's hands in Texas. The interstate commerce element of a § 922(g)(1) charge is satisfied where the government demonstrates that the firearm was manufactured out of state.[3]

Finally, Guidry attacks the constitutionality of his conviction under § 922(g)(1) as applied to him, arguing that the government had to prove that his possession of a firearm had a "substantial" effect on interstate commerce under *United States v. Lopez,* 514 U.S. 549 (1995); *United States v. Morrison*, 529 U.S. 598 (2000); and *Jones v. United States*, 529 U.S. 848 (2000). As Guidry concedesSShe notes that he merely raises the issue to preserve it for further reviewSSthis argument is foreclosed by our precedent.[4]

### III.

Guidry argues that the eyewitness identification testimony should have been suppressed because it was impermissibly tainted by a suggestive show-up procedure. In reviewing the denial of a suppression motion, we accept the district court's findings of fact unless they are clearly erroneous, but we review *de novo* the court's ultimate conclusion of the constitutionality of the law enforcement action. *See Unit-*

---

[2] Guidry is correct in arguing that the fact that the weapon was found in a closet in his home is insufficient to prove constructive possession. *Cf. United States v. Fields*, 72 F.3d 1200, 1212 (5th Cir. 1996) (holding that constructive possession may be proven under § 922(g)(1) if a firearm is found in a defendant's residence, despite the fact that the home was jointly occupied, *where the firearm was located in plain view*). There was, however, sufficient evidence of *actual* possession.

[3] *See Daugherty,* 264 F.3d at 518; *see also United States v. Kuban*, 94 F.3d 971 (5th Cir. 1996) (affirming a § 922(g)(1) conviction where the weapon was manufactured in Belgium and possessed in Texas).

[4] *See United States v. Rawls*, 85 F.3d 240, 242 (5th Cir. 1996) ("[N]either the holding in *Lopez* nor the reasons given therefor constitutionally invalidate § 922(g)(1)."); *see also Daugherty,* 264 F.3d at 518 ("Neither *Jones* nor *Morrison* affects or undermines the constitutionality of § 922(g).").

*ed States v. Saucedo-Munoz*, 307 F.3d 344, 351 (5th Cir. 2002). Whether an identification is constitutionally admissible is a mixed question of fact and law. *See United States v. Hefferon*, 314 F.3d 211, 217 (5th Cir. 2002).

The Due Process Clause protects against the use of evidence obtained from impermissibly suggestive identification procedures. *See United States v. Rogers*, 126 F.3d 655, 658 (5th Cir. 1997) (citing *Manson v. Brathwaite*, 432 U.S. 98 (1977)). The admissibility of identification evidence is governed by a two-step test: First, we determine whether the identification procedure was impermissively suggestive, and second, we ask whether the procedure posed a "very substantial likelihood of irreparable misidentification." *Rogers*, 126 F.3d at 658 (citing *United States v. Sanchez*, 988 F.2d 1384, 1389 (5th Cir. 1993)). If we answer both questions in the affirmative, the identification is inadmissible. *Id.*

As to the first part of the test, Guidry argues that the show-up was impermissibly suggestive because he was part of a lineup outside the restaurant window, handcuffed aside a patrol car. Guidry relies on *United States v. Shaw*, 894 F.2d 689, 692 (5th Cir. 1990), in which we found a show-up to be impermissibly suggestive where the suspect was presented for identification at the crime scene alone, handcuffed, and before an FBI vehicle. Guidry's situation is distinguishable, however, because he was not shown alone as was the defendant in *Shaw*; he was displayed to the eyewitnesses together with four others who were of the same race, three of whom were of similar weight and height, and all of whom were in handcuffs and stood in front of a police car.

The eyewitnesses were only allowed to make their identifications individually and were not permitted to communicate with each other until the procedure was complete. The procedure employed was analogous to a typical station-house lineup, apart from the situs of the show-up and the fact that all the suspects were in handcuffsSSdifferences that did not taint the procedure, given that all the suspects were similarly disabled. Under these circumstances, the procedure was not unnecessarily suggestive.[5]

Because the procedure was not unnecessarily suggestive, we need not consider the second prong of the test, whether there was a "substantial likelihood of misidentification."

---

[5] Guidry also summarily states, without discussion, that his situation is similar to those in *Foster v. California*, 394 U.S. 440 (1969), and *United States v. Watkins*, 741 F.2d 692, 694 (5th Cir. 1984), in which identification procedures were found to be unnecessarily suggestive, but both cases are plainly distinguishable. In *Foster*, the witness first failed to identify the defendant in a lineup in which the defendant was significantly taller than the other members. *See Foster*, 394 U.S. at 442-43. Then, the defendant was put into a one-to-one confrontation with the witness, after which the witness was still tentative about identifying him. *See id.* at 443. The defendant was finally identified by the same witness in a subsequent lineup in which he was the only member who had participated in the first one. *See id.* The Court found that the "suggestive elements in this identification procedure made it all but inevitable that [the witness] would identify petitioner whether or not in fact he was 'the man.'" *Id.* By contrast, Guidry's only show-up involved other suspects of similar physical appearance, and he was independently identified by two separate witnesses the first and only time he was displayed. *Watkins* is distinguishable because it involved a one-one-one show-up as in *Shaw*, whereas Guidry was displayed for identification with four other suspects who were similar in appearance. *See Watkins*, 741 F.2d at 694.

4

The district court properly denied Guidry's suppression motion.

## IV.

Guidry argues that the district court erred in admitting exhibits 4 and 5, because the chain of custody had been broken. We review admission of evidence for abuse of discretion. *See United States v. Dixon*, 132 F.3d 192, 196 (5th Cir. 1997). In deciding whether to admit evidence, the district court only has the duty to determine whether the government made a sufficient *prima facie* showing of authenticity; the ultimate issue of authenticity is a question for the jury. *See United States v. Sparks*, 2 F.3d 574, 582 (5th Cir. 1993).

Exhibits 4 and 5 were rolls of duct tape and rope twine—shown through expert testimony to have Guidry's fingerprints on them—alleged to have been used by him and his cohorts to restrain the victims during the robbery. Guidry's brief inaccurately claims that these specific pieces of evidence were recovered by Officer Ryan Janovsky at the house where he was arrested.[6] In fact, the exhibits were found at the crime scene by Detective Scott Felts, who testified that he released them to Sells, who in turn stated that he transported them to the police department and logged them into the evidence locker.

The essence of Guidry's argument is that the chain of custody was defective because there was insufficient documentation of the evidence's being passed from officer to officer. A district court does not abuse its discretion, however, in admitting evidence that was not initialed or signed for as it was transferred, so long as there is testimony from the officers establishing their respective links in the chain of custody.[7] The fact that the chain of custody was not perfectly documented was made apparent during cross-examination and was proper material for the jury to consider when deciding how much weight to give to the evidence. The district court did not abuse its discretion in admitting Exhibits 4 and 5.

## V.

Guidry argues that the district court gave improper jury instructions. A properly objected-to instruction is reviewed for abuse of discretion. *See United States v. Daniels*, 281 F.3d 168, 183 (5th Cir. 2002); *see also United*

---

[6] Janovsky collected other pieces of evidence, including the firearm (Exhibit 3-A) that Guidry was alleged to have possessed during the robbery. Guidry mentions in passing that there was "little documentation to establish the chain of custody of the firearm," but it is not plain from his brief that he is challenging the admission of this evidence. Even if he is, there was testimony by each officer who handled the firearm, describing how it ultimately ended up in the evidence locker—Janovsky testified that he passed the firearm to Officer Turner, who in turn testified that the handed the same evidence to Officer Chad Sells, who testified that he transported it to the police department and logged it in as evidence. Even if the documentation was incomplete, the district court did not abuse its (continued...)

[6](...continued)
discretion in admitting the firearm. *See Dixon*, 132 F.3d at 197 n.6.

[7] *See id.*; *see also Sparks*, 2 F.3d at 582. In fact, the chain of custody demonstrated here is more reliable than that in *Sparks*, where the initial collecting officer neither documented its collection with his initials nor testified as to its discovery and handoff to another officer in the chain of custody. *See id.* (noting that the gap is a matter of the weight of the evidence—a jury question—rather than admissibility); *United States v. Shaw*, 920 F.2d 1225, 1229-30 (5th Cir. 1991).

*States v. Ho*, 311 F.3d 589, 604 (5th Cir. 2002). We review *de novo* whether an instruction misstated an element of a statutory crime. *See United States v. Morales-Palacios*, 369 F.3d 442, 445 (5th Cir. 2004) (citing *Ho*, 311 F.3d at 605). We consider whether the jury instruction, taken as a whole, "is a correct statement of the law and whether it clearly instructs jurors as to the principles of the law applicable to the factual issues confronting them." *Daniels*, 281 F.3d at 183 (internal citations omitted).

Guidry objects to the refusal to use the pattern jury charges for a violation of § 922(g)(1), arguing that the instruction given improperly "diluted" the government's burden of proving the interstate nexus of the charge. Guidry requested that the district court charge the jury with Fifth Circuit Pattern Jury Instructions §§ 1.39[8] and 2.48,[9] but the court gave the following instruction: "That the possession of the firearm was in and affecting commerce; that is, that before the defendant possessed the firearm, that it had traveled at some time from

---

[8] Section 1.39 provides the general definition of "interstate commerce," stating that "[i]nterstate commerce means commerce or travel between one state, territory or possession of the United States and another state, territory or possession of the United States, including the District of Columbia."

[9] Section 2.47 applies specifically to charging the jury regarding an alleged violation of 18 U.S.C. § 922(g)(1). The relevant portion of the model instruction, dealing with the element of the crime addressing the nexus between the firearm and interstate commerce, reads:

> *Third*: That the possession of the firearm was in [affecting] commerce; that is, that before the defendant possessed the firearm, it had traveled at some time from one state to another.

one state to another, or between any part of the United States and any other country."

The only difference between the instruction given and the requested instructions is that the court added language indicating that travel between "any part of the United States and any other country" would also satisfy the interstate commerce element. The court committed no error in doing so; it was plainly following the principles of law in this circuit. *See United States v. Wallace*, 889 F.2d 580, 583 (5th Cir. 1989). The "affecting commerce" element of § 922(g)(1) includes both interstate and foreign commerce. *Id.* Hence, the instruction correctly stated the law and plainly instructed the jurors on the factual issues they were facing.[10]

## VI.

Guidry contends there was a fatal variance between the facts alleged in the indictment and the evidence at trial. A defendant cannot prevail on such a claim unless he demonstrates that the variance was material and prejudiced his substantial rights. *See United States v. Mikolajczyk*, 137 F.3d 237, 243 (5th Cir. 1998). "As long as the defendant receives notice and is not subject to the risk of double jeopardy, his substantial rights are not affected." *Id.* (citing *Berger v. United States*, 295 U.S. 78, 83 (1935)). Guidry points to two separate variances between the language of his indictment and the proof used to convict: that (1) although the indictment only alleged that

---

[10] *See Daniels*, 281 F.3d at 183. In fact, the given instruction arguably did a better job of informing the jurors of the applicable law than does Pattern Jury Instruction § 2.47, which, because of its specificity, might have had the potential to mislead jurors to think that foreign commerce was not covered, contrary to the dictates of *Wallace,* 889 F.2d at 583.

he possessed a firearm "in and affecting commerce," the evidence and the jury instructions referred to interstate and foreign commerce; and (2) the specific model of firearm alleged in the complaint varied from the evidence used to prove the possession element of the § 922(g)(1) charge.

First, Guidry's argument that there was a variance because the indictment alleged that he possessed a weapon "in and affecting commerce," but the evidence and jury instruction referred to interstate or foreign commerce, is without merit. As previously mentioned, the phrase "affecting commerce" in a § 922(g)(1) charge covers both interstate and foreign commerce. *See Wallace*, 889 F.2d at 583. Because the terms are legally equivalent as we have interpreted § 922(g)(1), there is no difference and thus no fatal variance on that ground.

Secondly, Guidry reasons that there was a fatal variance because the indictment charged him with possessing a "9mm Kurz," but evidence at trial indicated that he had a ".380-caliber pistol." Assuming *arguendo* that these names describe two different types of firearms, such a difference is not material enough to constitute a fatal variance; we have previously held, under almost identical circumstances, that the type of weapon possessed is not *essential* to a conviction under § 922(g)(1), such that a variance in the type of weapon charged in the indictment with the evidence adduced at trial is not a material constructive amendment that requires vacating a conviction.[11]

---

[11] *See United States v. Munoz,* 150 F.3d 401, 416-17 (5th Cir. 1998) (affirming conviction under § 922(g)(1) despite variance between indictment, (continued...)

## VII.

Guidry argues that his sentence violates his Sixth Amendment right to findings by a jury, based on *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005), because the district court assessed sentencing enhancements under the then-mandatory sentencing guidelines, based on facts that were neither admitted by Guidry nor found by a jury beyond a reasonable doubt. As Guidry concedes, however, he did not object on this basis in the district court, so we review for plain error.[12]

Under the plain error standard, we may not correct an error that the defendant failed to raise in the district court unless "there is (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Cotton*, 535 U.S. 625, 631 (2002). "If all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

In *United States v. Mares*, 2005 U.S. App. LEXIS 3653, at *22-*31 (5th Cir. Mar. 4, 2005), we analyzed whether alleged *Booker* error constituted plain error. As was the situation for the defendant in *Mares*, Guidry is correct in asserting that his Sixth Amendment rights were violated under *Booker*.

Based solely on his indictment and the

---

[11](...continued) which alleged that defendant had 12-gauge shotgun, and proof that he possessed 20-gauge model).

[12] *See United States v. Rios-Quintero*, 204 F.3d 214, 215 (5th Cir. 2000) (applying plain error standard to review claim not raised in district court, based on Supreme Court decision issued after conviction).

jury's findings, Guidry was subject to a sentencing range of 63-78 months. At sentencing, however, the court made various factual findings that subjected him to increases in his sentencing range to 151-188 months. Because this assessment occurred before *Booker* was issued—when the application of these enhancements were deemed mandatory—the sentencing is constitutionally infirm under the Sixth Amendment. *Mares, id.* at *25 ("Under the mandatory Guideline system in place at the time of sentencing, [the defendant's] sentence was enhanced based on findings made by the judge that went beyond the facts admitted by the defendant or found by the jury . . . . [He] has therefore established *Booker* error."). Moreover, under *Mares* this kind of error meets the second prong of the test, because the error could not be more obvious under current law. *See id.* (citing *Johnson v. United States*, 520 U.S. 461, 468 (1997)).

Although the *Booker* error is obvious, it fails to meet the third prong, which requires that an error affect substantial rights. For this prong to be met, it must be shown that the error prejudiced the proceedings, that it "affected the outcome of the district court proceedings." *Id.* at *26 (citing *United States v. Olano*, 507 U.S. 725, 734 (1997)).

The defendant bears the burden of persuasion with respect to prejudice. *See id.* (citing *Olano*, 507 U.S. at 734). "[T]he pertinent question is whether [the defendant] demonstrated that the sentencing judge—sentencing under an advisory scheme rather than a mandatory one—would have reached a significantly different result." *Id.* at *27-*28. Just as in *Mares*, the defendant here fails to meet his burden, because he cannot point to anything in the record "from the sentencing judge's remarks or otherwise that gives us any clue as to whether [the judge] would have reached a different conclusion." *Id.* at *28. There is no reversible error in the sentence.

AFFIRMED.