IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 17, 2008

Charles R. Fulbruge III
Clerk

No. 07-11305

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

WILLIAM BRENT

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:05-CR-120-1

Before REAVLEY, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant William Brent was found guilty on one count of possession with intent to distribute cocaine base, one count of possession of a firearm in furtherance of a drug trafficking crime, and three counts of possession of a firearm by a felon. He was sentenced to a total of life imprisonment and 60 months, set to run consecutively, and now challenges several aspects of his trial and conviction. For the reasons set forth below, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

On June 27, 2007, following a jury trial, William Brent was found guilty on five counts: (1) one count of possession of 50 grams or more of a mixture and substance containing a detectable amount of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii); (2) one count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c); and (3) three counts of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) and § 924(e)(1). The evidence at trial focused on three dates: April 15, 2005, April 30, 2005, and September 7, 2005.

On April 15, 2005, during the execution of a search warrant, Brent was arrested while fleeing a Dallas residence used to distribute cocaine. Conducting a search incident to arrest, officers found two firearms in his possession. The officers asked Brent for his name, date of birth and other biometric information. They also asked him why he did not attempt to use the firearms against them. Brent replied that he knew he was outnumbered and the odds were not in his favor for a shoot-out. Brent then went on to claim ownership for "everything in the house." He was handcuffed, placed in a squad car, and driven back to the residence. While in the squad car, Brent again told officers that "all the drugs and guns in the house are mine." He asked to speak with the chief investigating officer, Daniel Kaase, and told him that the rest of the individuals being arrested in the raid "had nothing to do with this" and again claimed ownership of the drugs and guns on the premises. Brent was not given a Miranda warning. A search of the residence uncovered several guns, drugs—including 279 grams of cocaine base and one pound of marijuana—and drug-related paraphernalia. Officers intended to interview Brent but he was inexplicably released on bond.

On April 30, 2005, Brent was stopped for a traffic violation. During the stop, the officer on the scene seized a loaded firearm and a bag of marijuana. The officer performed a background check and found that there was a warrant

out for Brent's arrest. Brent was arrested. It is again inexplicable as to why he was subsequently released.

On September 7, 2005, pursuant to a federal arrest warrant, officers arrested Brent at a Dallas residence. After his arrest, Brent made several incriminating statements. He claimed that the marijuana and gun found in the possession of another individual on the scene belonged to him. He also stated that: (1) he should have stayed in Mexico with a drug cartel where he rode around in bulletproof cars; (2) if anyone had tried to arrest him in Mexico, that person would have been killed; (3) his arrest would resolve a lot of murders because he had killed a number of people; (4) if his arrest was the result of a snitch, that person would be killed; and (5) he wished he had been arrested later so he could have killed more of his enemies. He was not given a Miranda warning. Officer Kaase arrived on the scene and asked Brent if anything in the residence could hurt the officers who were yet to conduct a search. Brent informed him that there was a firearm under the mattress. A search of the residence produced the gun Brent had described. Brent was finally detained.

In October of 2006, Brent entered a plea agreement which was later withdrawn based on a miscalculation of the applicable sentencing guideline range. Defense counsel then submitted several motions to suppress evidence and dismiss charges. Brent argued that the felon in possession of a firearm charge should be dismissed because the underlying statute is unconstitutional and Brent did not know he was a felon or that his actions affected interstate commerce. He also sought to suppress the incriminating statements made on April 15 and September 7, and moved to suppress the evidence seized during the April 30 traffic stop. All motions were denied. With the exception of the motion based on the traffic stop, Brent appeals all rulings.

During voir dire, the government struck one juror whose exclusion the defense now appeals. Brent objected to the government's peremptory strike but did not challenge the prosecution's race-neutral explanation.

At trial, the government introduced evidence establishing that all of the firearms seized in connection with Brent were functioning as designed and were manufactured outside Texas. The prosecution did not introduce Brent's statement that he would have attempted to shoot the officers on April 15 if he had not been outnumbered. The government also did not introduce Brent's statements that he should have remained in Mexico, that several murders would be solved by his detention, and that whoever informed on his location would be killed. These statements were introduced at sentencing which Brent now appeals.

At the close of the prosecution's evidence, the defense moved for acquittal on all charges pursuant to Federal Rule of Criminal Procedure 29. The motion was denied and is now appealed, along with the verdict and sentence. The district court imposed a sentence of life imprisonment plus 60 months, to run consecutively. This sentence was also to run consecutively to any sentence imposed on six charges pending in state court.

In total, Brent appeals on eight grounds, arguing that the district court erred in: (1) denying his motion to suppress incriminating statements resulting from the functional equivalent of a custodial interrogation; (2) allowing the government to introduce statements resulting from Miranda violations at sentencing; (3) finding that the government offered an adequate race-neutral explanation for striking a juror; (4) denying his Rule 29 motion that there was no nexus between the firearms and interstate commerce; (5) allowing an unavailable witness's testimony to be introduced at sentencing; (6) sentencing him to life imprisonment; (7) failing to take into account the factors of 18 U.S.C. § 3553(a) at sentencing; and (8) running his sentence consecutively to unimposed

sentences from other jurisdictions. Brent concedes that his fourth, fifth and eighth claims of error are foreclosed by circuit precedent but urges this court to revisit its prior holdings.

For the reasons discussed below, Brent's claims fail. We affirm the district court on all grounds.

## STANDARD OF REVIEW

"We review the district court's findings of fact supporting the denial of a motion to suppress under a clearly erroneous standard and review the district court's conclusions of law de novo." United States v. Williams, 365 F.3d 399, 403 (5th Cir. 2004). Because challenges to constitutional violations are assertions that the district court erred in its legal conclusions, these are reviewed de novo. Challenges to a district court's determination of race-neutral explanations given by an attorney regarding peremptory challenges are reviewed for clear error. United States v. Davis, 393 F.3d 540, 544 (5th Cir. 2004). The reasonableness of a sentence is reviewed under the abuse-of-discretion standard. United States v. Williams, 517 F.3d 801, 807–808 (5th Cir. 2008).

Therefore, claims one, two, four, five, and six receive de novo review. Brent's third claim is reviewed for clear error. Claims seven and eight are reviewed for abuse of discretion.

## DISCUSSION

A. Motion to Suppress Incriminating Statements

Brent argues that the district court erred in denying his motion to suppress the incriminating statements of March 15 and September 7. He asserts that the officers' actions in placing him in the back of the squad car, on both dates, was the equivalent of a custodial interrogation. Citing Rhode Island v. Innis, 446 U.S. 291, 301 (1980), Brent states that the officers "knew or should have known that returning Brent to the house to see his friends get arrested was 'reasonably likely to evoke an incriminating response' from him." The

government concedes that Brent was in custody for Miranda purposes but argues that there was no interrogation.

Brent's arguments are without merit. The Fifth Amendment protects a defendant from self-incrimination and prohibits the prosecution from using statements "stemming from custodial interrogation . . . unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Nevertheless, "[v]olunteered statements of any kind are not barred by the Fifth Amendment" and do not implicate any Miranda considerations. Innis, 446 U.S. at 300 (quotation omitted). Innis specifically states that Miranda concerns are not triggered when officers merely take actions "normally attendant to arrest and custody." Id. at 301.

Brent's Miranda rights came into play when, on April 15th, officers asked him why he did not use his weapons to shoot them. Even if we assume arguendo that this sole question violated Brent's Fifth Amendment protections, this statement was never introduced at trial. Thus, any Miranda violation was remedied by its exclusion—precisely the Constitutional protection required. Brent does not point to a single other question asked by police that may have amounted to a custodial interrogation. Instead, Brent argues that he was psychologically coerced by police actions, establishing the functional equivalent of interrogation. Being placed in hand-cuffs and held in a squad car cannot amount to the functional equivalent of interrogation. No court has ever held that seeing others implicated in a crime being arrested amounts to psychological coercion. Even if we accept Brent's argument that the sight of his friends being arrested placed Brent under psychological coercion, Miranda protections are only violated when officers should have known their actions would produce an incriminating response. Officers cannot be held to anticipate the unique psychological and subjective factors affecting each potential defendant.

Because Brent's incriminating statements did not result from custodial interrogation or the functional equivalent thereof, the district court did not err in denying his motion to suppress these statements.

## B.  Incriminating Statements Introduced At Sentencing

Brent renews his arguments from the first claim of error to assert that, for the same reasons presented above, the district court erred in considering his incriminating statements during sentencing.  A review of the record reveals that the district court clearly stated that, even without Brent's own incriminating statements, life imprisonment was appropriate given his history as a violent career offender.  Thus, even if any—or all—incriminating statements made by Brent during his arrests were erroneously admitted at sentencing, it was harmless and the conviction stands.

## C.  Government's Explanation for Striking a Juror

Brent argues that the district court erred in accepting the government's non-discriminatory reason for striking a minority juror and that his rights under Batson were thereby violated. Batson v. Kentucky, 476 U.S. 79, 89 (1986) (holding that the Equal Protection Clause forbids the prosecution from challenging potential jurors solely on the basis of race or assumptions drawn from their race).  Brent asserts that, while the court had a colloquy with the government regarding its reasons for striking each minority juror and found that the reasons were neutral, because the prosecution cited facial expressions and the district court did not make a specific finding on juror demeanor, its determination cannot be afforded deference.  The government responds that it provided a race-neutral explanation which was acceptable to the court, and that Brent did not object to the government's race-neutral reason and has therefore waived this issue on appeal.

This court has consistently held that "we must give great deference to the district court because findings in this context largely turn on an evaluation of

the credibility or demeanor of the attorney who exercises the peremptory challenge." Davis, 393 F.3d at 544 (alteration and internal quotations omitted). The district court may only be reversed for clear error. Id. Further, where the defense fails to object to the prosecution's offered reasons for a peremptory challenge, he appears to acquiesce in them and waives his right to object on appeal. United States v. Arce, 997 F.2d 1123, 1127 (5th Cir. 1993).

Brent's assertion of error fails. The record shows that Brent made no objection to the government's demeanor explanation. Brent waived this issue on appeal.

## D. Rule 29 Motion

Brent argues that the district court erred in denying his Rule 29 motion for acquittal because proof that a firearm crossed state lines is insufficient to establish the required jurisdictional nexus to interstate commerce under 18 U.S.C. § 922(g)(1). Conceding that circuit precedent forecloses this argument, Brent urges reconsideration based on United States v. Lopez, 514 U.S. 549 (1995). Brent's argument fails.

For a conviction under § 922(g)(1), the government must prove beyond a reasonable doubt that: "(1) that the defendant previously had been convicted of a felony; (2) that he possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce." United States v. Daugherty, 264 F.3d 513, 515 (5th Cir. 2001) (quotation omitted). Brent does not dispute the first two elements but argues that this circuit's precedent should be reversed as to the proof required on the third.

We have consistently held that, where the government proves beyond a reasonable doubt that a firearm has traveled through interstate commerce before coming into the defendant's possession, the interstate commerce nexus is satisfied. See, e.g., United States v. Guidry, 406 F.3d 314, 318 (5th Cir. 2005) ("The interstate commerce element of a § 922(g)(1) charge is satisfied where the

government demonstrates that the firearm was manufactured out of state."); Daugherty, 264 F.3d at 518. We have upheld the constitutionality and proof requirements of § 922(g)(1) after the Supreme Court's Lopez decision. See Guidry, 406 F.3d at 318–19 (noting that the constitutionality of § 922(g)(1) is foreclosed by prior precedent). We have stated that, "neither the holding in Lopez nor the reasons given therefor constitutionally invalidate § 922(g)(1)." United States v. Rawls, 85 F.3d 240, 242 (5th Cir. 1996). The district court did not err in denying Brent's Rule 29 motion for acquittal.

E. Unavailable Witness Testimony at Sentencing

Brent asserts that the district court erred in allowing evidence from an unavailable witness, implicating Brent in several murders, to be introduced at sentencing. Brent argues that circuit precedent should be reversed to afford defendants the opportunity to cross-examine witnesses at every stage of their case, including sentencing. Conceding that his argument is foreclosed by circuit precedent, Brent raises the issue to preserve it for future review. Brent's argument fails.

Defendants have no Confrontation Clause right at sentencing. United States v. Mitchell, 484 F.3d 762, 776 (5th Cir. 2007). The district court specifically found the hearsay evidence introduced at sentencing to be reliable and corroborated by eyewitness reports, evidence found in Brent's possession, and Brent's own statements. The district court did not err in allowing an unavailable witness's testimony at sentencing.

F. Life Sentence

Brent argues that the district court erred in imposing a life sentence. While the jury found Brent guilty on all five counts for which he was tried, placing him within the guidelines range for a life sentence, he argues that the district court should not have heard additional evidence at sentencing. This argument is a revival of his challenge to the evidence in the fifth ground for

error.  More generally, Brent asserts that a life sentence is unreasonable for drug and weapons charges.[1]  Brent's arguments are without merit.

This circuit has held that, "Booker contemplates that, with the mandatory use of the Guidelines excised, the Sixth Amendment will not impede a sentencing judge from finding all facts relevant to sentencing." United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005).  A judge is given wide discretion with respect to the evidence that he may consider in imposing a sentence.  The district court did not abuse its discretion in imposing a life sentence.

G.  Section 3553(a) Sentencing Factors

Brent argues that the district court's sentence should be reversed because the court did not specifically mention the 18 U.S.C. § 3553(a) factors[2] in the sentencing determination.  Brent maintains that the district court should have deviated below the guidelines range in imposing a sentence.  The government argues that the district court's failure to list the § 3553(a) factors is of no moment because the court actually evaluated Brent's history and violence, which is precisely what § 3553(a) requires.  Brent's arguments are without merit.

We have held that, "'[i]f the sentencing judge exercises [his] discretion to impose a sentence within a properly calculated Guideline range, in our reasonableness review we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines.'" Unites States v. Alonzo, 435 F.3d 551, 554 (5th Cir. 2006) (quoting Mares, 402 F.3d at 519).  Thus, a court that

---

[1] Brent does not, however, assert that the district court improperly calculated the applicable guidelines range.

[2] Section 3553(a) sets forth the following factors to be considered at sentencing: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed . . . ; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for [similar offenders or offenses] . . . ; (5) any pertinent policy statement . . . ; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

fails to explicitly discuss the § 3553(a) factors may still be affirmed if the sentence is within the guidelines range and reasonable. Our precedent makes it clear that "[a] checklist recitation of the section 3553(a) factors is neither necessary nor sufficient for a sentence to be reasonable." United States v. Smith, 440 F.3d 704, 707 (5th Cir. 2006). We review the sentencing record for reasonableness. The record reveals that the district court discussed the § 3553(a) factors. The district court considered evidence regarding Brent's lengthy criminal career of violence and drugs, heard testimony of Brent's involvement in five murders, and was presented with Brent's own incriminating statements. The sentence imposed by the district court was reasonable.

H. Consecutive sentences

Finally, Brent challenges the district court's determination to run his sentence consecutively with unimposed state sentences in order to preserve the issue on appeal. He does, however, recognize that this issue is foreclosed by our opinion in United States v. Brown, 920 F.2d 1212 (5th Cir. 1991), abrogated by, United States v. Candia, 454 F.3d 468, 473 (5th Cir. 2006). Brent's arguments are not availing.

As we made clear in Candia, under United States v. Booker, 543 U.S. 220 (2005), both the sentence itself and its consecutive nature are reviewed for reasonableness. 545 F.3d at 472–73. "Where . . . the term of imprisonment and the consecutiveness of that sentence were each imposed by proper interpretation and calculation of applicable guidelines provisions, the consecutiveness of the sentence enjoys a presumption of reasonableness similar to that applied to a within-guidelines term of imprisonment." Id. at 479. As discussed above, the district court evaluated Brent's extensive criminal record, his own admissions of guilt and the corroborated evidence of Brent's participation in five murders. Because we review a district court's imposition of sentence for reasonableness

and Brent offers no arguments to reverse our precedent, the district court's sentencing determination is affirmed.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.