**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 6, 2009

Charles R. Fulbruge III
Clerk

No. 07-11222

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LOUIS MOODY, also known as Youngsta; DETROIT HINES,
also known as Li'l Nut; DERRICK WOODARD,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH and SOUTHWICK, Circuit Judges,
and ENGELHARDT, District Judge.[*]

JERRY E. SMITH, Circuit Judge:

Louis Moody, Detroit Hines, and Derrick Woodard were convicted of crimes related to illegal drug sales. They appeal, and we affirm.

_____

[*]District judge for the Eastern District of Louisiana, sitting by designation.

I.

The defendants were involved in crack cocaine sales in the "Fish Bowl,"[1] a part of the Poly neighborhood located in east Fort Worth, Texas. The Fort Worth Police Department ("FWPD") had difficulty policing the Fish Bowl, which served as a base for several drug dealers.

One of these was Holmes, who sold crack in Fort Worth from 2004 to 2006. Initially, he worked for a drug partnership consisting of defendant Hines, his brother Darryl Hines, and Michael Lewis. Holmes later started his own drug business and partnered with Darryl and Detroit Hines. Woodard also sold drugs for Holmes. Moody, at least on one known occasion, referred customers to Hines and Holmes. All three defendants—as well as the other dealers in the Fish Bowl—were members of the Five-Duce Crips, Four-Trey Crips, and a subset of the Five-Duce Crips known as the Polywood Crips.

The FWPD started their investigation into the Fish Bowl drug ring with the help of Michael Nunally, a former drug dealer turned confidential informant. Working with FWPD Officer Teagan Broadwater, Nunally helped identify participants. On one identification trip, Moody joined Nunally and Broadwater; Moody was unaware that Broadwater was a police officer or that Nunally was acting as an informant. Broadwater asked Moody where he could buy crack, and Moody told him to go to a house in the Poly neighborhood. At the house, Nunally and Moody approached Holmes and told him they had a customer who wanted to purchase "a hundred piece," or roughly four grams of crack.

Because Moody vouched for Broadwater, Holmes agreed to the deal. Broad-

---

[1]The area is called the Fish Bowl because of the layout of the streets, which strongly resembles a bowl shape. There are only two roads in and out of the Fish Bowl, which were monitored by lookouts. When Fort Worth police arrived to stop drug or weapons violations, the lookouts alerted the neighborhood, making it hard to carry out successful arrests in that part of town.

water gave Holmes $100, and Holmes gave Nunally the crack in exchange. Broadwater gave Moody $10 for helping broker the sale.

Later, Broadwater and Nunally returned to the house to buy more drugs. Nunally pointed out that "Lil' Nut,"[2] was standing in front of the home. Nunally attempted to set up a drug buy between Lil' Nut and Broadwater, but Lil' Nut declined. Broadwater then gave Nunally $100 to complete the deal himself. Nunally approached the house, gave Lil' Nut the money, and went inside, where Holmes gave him a baggie containing crack. After this drug buy, Broadwater searched the FWPD mug shot files for the alias Lil' Nut and discovered that that alias belonged to Hines. Broadwater continued his investigation into the Fish Bowl drug conspiracy, eventually cooperating with the FBI, specifically Special Agent Coffindaffer. This began what became known as Operation Fish Bowl.

About five months later, FWPD Officer Martinez saw Hines "peel out" in his car in a neighborhood north of the Fish Bowl. Martinez pursued Hines, who threw a metal object out of his car during the pursuit. Hines crashed his car into a wall and was arrested. Martinez later found the metal object Hines had thrown, which was a handgun. Martinez did not inventory the car but had it towed to the FWPD lot. Coffindaffer eventually heard that the police were storing Hines's car, and he searched it without a warrant six days after the initial chase, locating three cell phones, receipts, and bills.

Two months later, the FWPD issued a search warrant for the home of another drug dealer, Calvin Smith. When the warrant was executed, Hines was inside Smith's house. After surrounding the house, the FWPD told the occupants to leave, but they refused. Eventually, the police fired tear gas into the house,

_____

[2] Broadwater later learned that "Lil' Nut" is the nickname for Detroit Hines, who sometimes also goes by "Little Nut." This nickname distinguished him from his brother, who was referred to as "Big Nut."

3

which forced everyone outside. Inside they found an AR15 assault rifle, a handgun, a glass pot with a fork in it,[3] two boxes of ammunition, crack cocaine residue, documents relating to Hines, and a rap song.

Hines, Woodard, Moody, and a variety of others swept up in Operation Fish Bowl investigation were arrested and tried on drug-related charges. The three defendants were found guilty and appeal their convictions or sentences.

## II.

## A.

Moody appeals his conviction of conspiracy and aiding and abetting, alleging that the court erred in not granting his motion for judgment of acquittal based on insufficient evidence. "We review the district court's denial of a motion for judgment of acquittal *de novo*." *United States v. Klein*, 543 F.3d 206, 212 (5th Cir. 2008) (citation omitted), *cert. denied*, 129 S. Ct. 1384 (2009). "Our review for sufficiency of the evidence following a conviction is narrow. We will affirm if a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *Id.* (citation omitted). All reasonable inferences are drawn in the light most favorable to the prosecution. *Id.* "[O]ur standard of review does not change if the evidence that sustains the conviction is circumstantial rather than direct." *United States v. Morgan*, 505 F.3d 332, 341 (5th Cir. 2007) (citation omitted).

Moody was convicted, under 28 U.S.C. § 841, of aiding and abetting the distribution of cocaine. "To prove that a defendant aided and abetted, the Government must prove that the . . . elements of the substantive offense occurred and that the defendant associated with the criminal venture, purposefully partici-

---

[3] The object, which had crack cocaine residue on it, was presumably used either to make or to smoke crack.

pated in the criminal activity, and sought by his actions to make the venture succeed." *United States v. Jimenez*, 509 F.3d 682, 689 (5th Cir. 2007) (citations omitted), *cert. denied*, 128 S. Ct. 2924 (2008). "The essential elements of a violation of Section 841(a)(1) [for cocaine distribution] include: (1) knowledge, (2) possession, and (3) intent to distribute [cocaine]." *United States v. Patino-Prado*, 533 F.3d 304, 309 (5th Cir.) (citation omitted), *cert. denied*, 129 S. Ct. 328 (2008). The underlying offense occurred when Broadwater bought drugs from Holmes. Moody knowingly directed customers to Holmes, an activity associating with the criminal venture performed for the venture to succeed. Ample evidence exists for this conviction.

There is also substantial evidence to support Moody's conspiracy conviction. To convict under 21 U.S.C. § 846, the government must prove "(1) the existence of an agreement between two or more persons to violate the narcotics laws, (2) that each alleged conspirator knew of the conspiracy and intended to join it, and (3) that each alleged conspirator did participate in the conspiracy." *United States v. Cantwell*, 470 F.3d 1087, 1090 (5th Cir. 2006) (citation omitted).

Moody asserts, as a defense, that he was such a drug addict that he "could not be trusted by anyone to distribute drugs," because if he got them, "he smoked them up himself." Regardless of how drug addicted Moody was, however, Holmes testified that Moody was a member of the Fish Bowl conspiracy. This testimony alone is sufficient to support Moody's conviction.

## B.

Woodard was convicted, under 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A) and (C), of conspiracy to sell crack. He alleges that the court erred in sentencing when it found that a previous crime constituted a separate offense for sentencing purposes. Sentencing guideline decisions are reviewed for abuse of discretion.

5

*See United States v. Rowan*, 530 F.3d 379, 381 (5th Cir. 2008). "Though we review a sentence for abuse of discretion, we review the district court's application of the guidelines *de novo* and its findings of fact at sentencing for clear error." *Klein*, 543 F.3d at 213 (citation omitted). "An error in applying the guidelines is a significant procedural error that constitutes an abuse of discretion." *Id*. (citation omitted).

Under § 841, a defendant must be sentenced to a minimum of ten years for cases, as here, involving fifty grams or more of cocaine; if he has a prior final drug conviction, however, the minimum jumps to twenty years. Woodard was convicted in 2001 in state court for felony drug possession; the court found that that conviction involved drugs, so it enhanced the sentenced to 240 months. Woodard argues that the prior conviction was part of the same conspiracy and therefore cannot be used to enhance his sentence.

We uphold the use of the prior conviction to enhance, but on different grounds.[4] Our sister circuits have held that prior convictions for conduct in furtherance of a conspiracy can be used to enhance the statutory penalty for a later arrest under the same conspiracy.[5] We agree and also conclude that an earlier conviction from the same conspiracy can be used to enhance mandatory minimums. A defendant should not benefit in sentencing because he continued in a criminal enterprise *even after he was already arrested and convicted for the same enterprise*. "[T]he purpose of the mandatory minimum enhancement is to target

---

[4] "[I]t is an elementary proposition, and the supporting cases too numerous to cite, that this court may affirm the district court's judgment on any grounds supported by the record." *United States v. Dunigan*, 555 F.3d 501, 508 n.12 (5th Cir. 2009) (citation omitted).

[5] *See, e.g., United States v. Hansley*, 54 F.3d 709, 717 (11th Cir. 1995); *United States v. Garcia*, 32 F.3d 1017, 1019 (7th Cir. 1994); *United States v. Baker*, 10 F.3d 1374, 1420 (9th Cir. 1993), *overruled on other grounds by Apprendi v. New Jersey*, 530 U.S. 466 (2000); *United States v. Hughes*, 924 F.2d 1354, 1362 (6th Cir. 1991).

recidivism . . ., [and] it is more appropriate to focus on the degree of criminal activity that occurs after a defendant's conviction for drug-related activity is final rather than when the conspiracy began." *United States v. Garcia*, 32 F.3d 1017, 1019-20 (7th Cir. 1994) (citation omitted). The court did not err in enhancing.

Woodard also alleges that the court erred in sentencing him based on the presentence report ("PSR") and its addendum. We review guideline decisions, whether inside or outside the guideline range, for abuse of discretion. *See Gall v. United States*, 128 S. Ct. 586, 597 (2007). "In performing that review, we are 'first [to] ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range.'" *United States v. Williams*, 517 F.3d 801, 808 (5th Cir. 2008) (citing *Gall*, 128 S. Ct. at 597) (quotations and ellipses omitted). Findings of fact are reviewed for plain error; legal conclusions, *de novo*. *See United States v. Villanueva*, 408 F.3d 193, 202 (5th Cir. 2005).

Woodard believes that the court should not have credited the statements of Audrey Taylor in calculating drug quantity for sentencing purposes. Of the 177.85 grams of crack attributed to Woodard in the PSR, 168 grams came from sales to Taylor. Woodard points to police information that indicates another dealer, Millard Payne, not Woodard, may have been involved in these sales. Taylor, however, still testified that she was involved with Woodard during the drug sales. Coffindaffer also provided a statement in the PSR's addendum saying that Taylor's testimony was credible and that Payne was not involved in the sales. The court ultimately relied on these statements in determining drug quantity.

Woodard bears the burden of showing that the information the court relied on is materially untrue. *See United States v. Ramirez*, 367 F.3d 274, 277 (5th Cir. 2004). Also, the court's decision is a finding of fact reviewed for plain error. *See Villanueva*, 408 F.3d at 202. Although Woodard notes conflicting evidence, the

7

court did not commit plain error when it credited the other evidence presented. Taylor and Coffindaffer's statements provide ample support for the decision,[6] which, with the PSR's factual support, was not plain error.

## C.

Hines was charged with, and convicted of, a variety of crimes relating to cocaine and firearms possession.[7] He alleges several errors. First, he claims the court should have suppressed evidence found in his car after Coffindaffer searched it. "When reviewing a ruling on a motion to suppress, the court reviews questions of law *de novo* and findings of fact for clear error." *United States v. Valadez*, 267 F.3d 395, 397 (5th Cir. 2001) (citation omitted). "We view the evidence in the light most favorable to the party that prevailed in the district court." *Id.* (citation omitted).

We must examine whether Hines waived this issue. He did not raise it in a pre-trial suppression hearing, but only during trial when his counsel realized that Coffindaffer, and not Martinez, had searched the car. "[F]ailure to raise specific issues or arguments in pre-trial suppression proceedings operates as a waiver of those issues or arguments for appeal." *United States v. Looney*, 532 F.3d 392, 395 (5th Cir.) (emphasis and citation omitted), *cert. denied*, 129 S. Ct. 513

---

[6] Woodard also objects that Taylor's testimony involved hearsay. "[T]he district court may consider any relevant evidence, including uncorroborated hearsay statements, if the information has a 'sufficient indicia of reliability to support its probable accuracy.'" *United States v. Slaughter*, 238 F.3d 580, 585 (5th Cir. 2000) (citation omitted).

[7] Specifically, he was found guilty of six counts: (1) conspiracy to possess with intent to distribute more than fifty grams of [cocaine] in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A); (2) distribution of cocaine base and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; (3) felon in possession of a firearm in commerce in violation of 18 U.S.C. §§ 922(g)(1) and 924(a); (4) unlawful possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); (5) another count of felon in possession of a firearm in commerce; and (6) another count of possession with intent to distribute cocaine base.

(2008).

For two reasons, Hines has not waived the issue for appeal. First, the government never argued that he waived the issue, so the government has waived its potential waiver argument.[8] Second, in advance of trial the government misstated which police officer had searched Hines's car, information that was necessary for the pre-trial suppression motion. After defense counsel recognized that error, the court held a full suppression hearing outside the jury's presence. Therefore, because Hines did not have all the necessary information, and the issue was eventually fully litigated, the suppression issue was not waived.

Hines contends that the search of his car was unreasonable because there was no "nexus" between the reasons for his arrest and the search that would support the warrantless search. He relies on *Preston v. United States*, 376 U.S. 364 (1964), and *Cooper v. California*, 386 U.S. 58 (1967), which held that "for a warrantless search of an automobile under police control to be lawful it must be closely related to the reason for the arrest and the reason the car is in custody." *Williams v. United States*, 412 F.2d 729, 735 (5th Cir. 1969). Hines believes the search of his vehicle was not "closely related" to his arrest, so it was illegal.

The precedent Hines cites is no longer the governing authority for these searches. Beginning with *Chambers v. Maroney*, 399 U.S. 42 (1970), and continuing with *Texas v. White*, 423 U.S. 67 (1975), and *Michigan v. Thomas*, 458 U.S. 259 (1982), the nexus requirement was lessened and finally removed. In *United States v. Johns*, 469 U.S. 478 (1985), the modern rule was stated:

> A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no

---

[8] *See United States v. Bonilla-Mungia*, 422 F.3d 316, 319 (5th Cir. 2005) (discussing government waiver of waiver argument because it raised it only in supplemental briefing); *United States v. Beckham*, 968 F.2d 47, 54 n.5 (D.C. Cir. 1992) (noting government waiver of waiver issue because of government's failure to brief the issue).

requirement of exigent circumstances to justify such a warrantless search . . . . The Court of Appeals concluded that [*United States v. Ross*, 456 U.S. 789 (1982)] allows warrantless searches . . . only if the search occurs 'immediately' as part of the vehicle inspection or 'soon thereafter.' Neither *Ross* nor our other vehicle search cases suggest any such limitation.

*Id*. at 484 (citations omitted). "[T]he rationale of *Chambers* and its progeny is . . . that, given the scope of the initial intrusion caused by seizure of an automobile, there is no constitutional difference between the proper search on the highway and the later search at the station." *United States v. Shaw*, 701 F.2d 367, 379 (5th Cir. 1983).[9]

*Chambers* and its progeny have overruled *Preston* and *Cooper*, and the search of Hines's car was legal. Because Martinez had probable cause to search the car after Hines fled from police, Coffindaffer too had probable cause to search it six days later for unrelated reasons and without a warrant.

Hines next argues that the court erred in denying his suppression motion for evidence found during the police search of 2816 Sara Jane Lane. In his brief, however, Hines admits that he was not an owner or renter of the house and recognizes that he has no standing to challenge the search. He is correct; *Rakas v. Illinois*, 439 U.S. 128, 134 (1978), held that "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's . . . property has not had any of his Fourth Amendment rights infringed."

Hines, however, asserts that *Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400 (2007), overrules this precedent. Here, he is not correct. The Court in *Brendlin* did not change the Fourth Amendment test that was used in *Rakas* but

[9] *See also United States v. McSween*, 53 F.3d 684, 689 (5th Cir. 1995) ("If probable cause justified a warrantless search on the roadside, it likewise justified one at the station after the car was impounded" (citation omitted).).

instead restated that "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Brendlin*, 551 U.S. at \_\_\_, 127 S. Ct. at 2405 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). The Court applied this test to the passenger of a car and found that the passenger was "seized" under the Fourth Amendment. 551 U.S. at \_\_\_, 127 S. Ct. at 2406-07. Because *Brendlin* does not explicitly overrule *Rakas*, and there is no change in the basic Fourth Amendment analysis that led to *Rakas*, Hines is incorrect in his belief that he can challenge the warrant despite not owning, renting, or living in the home that was searched.

Hines challenges Broadwater's out-of-court identification of Hines and the denial of his motion to suppress that evidence. When reviewing a motion to suppress an eyewitness identification, "we accept the district court's findings of fact unless they are clearly erroneous, but we review *de novo* the court's ultimate conclusion of the constitutionality of the law enforcement action." *United States v. Guidry,* 406 F.3d 314, 319 (5th Cir. 2005) (citation omitted). Whether an identification is constitutionally admissible is a mixed question of fact and law. *Id.*

Hines contends that Broadwater's out-of-court identification was too suggestive and therefore inadmissible. "The Due Process Clause protects against the use of evidence obtained from impermissibly suggestive identification procedures." *Id.* (citation omitted). "The admissibility of identification evidence is governed by a two-step test: First, we determine whether the identification procedure was impermissively suggestive, and second, we ask whether the procedure posed a 'very substantial likelihood of irreparable misidentification.'" *Id.* (citation omitted). If we answer both questions in the affirmative, the identification is inadmissible. *Id.* (citation omitted). This is known as the *Brathwaite* test, after *Manson v. Brathwaite*, 432 U.S. 98 (1977).

Without deciding whether Broadwater's identification was impermissibly

11

suggestive,[10] we conclude that it easily passes the second *Brathwaite* prong, because it did not pose a "very substantial likelihood of irreparable misidentification." *Guidry*, 406 F.3d at 319 (citation omitted).

> The Supreme Court has identified several factors to help determine the likelihood of misidentification: (1) the opportunity of the witness to view the criminal at the crime scene; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*Coleman*, 456 F.3d at 544 (citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972); *Livingston v. Johnson*, 107 F.3d 297, 310-11 (5th Cir. 1997)).

Four of the five factors suggest that there was not a high likelihood of misidentification. Broadwater had an excellent " opportunity . . . to view the criminal at the crime scene;" he testified that he had a unhindered view of Hines during the drug sale and that the sale took place no further from him than the distance from the witness stand to counsel's table. Second, Broadwater's attention was focused solely on the drug buy, which was the primary *activity* taking place at the time. Third, Broadwater expressed no uncertainty regarding his identification of Hines's mug shot; it is notable that although Broadwater was open with defense counsel about several other misidentifications that took place during the Fish Bowl operation, he never wavered in his identification of Hines. Finally, Broadwater testified that his identification was made only a day or two after the drug deal, which is far shorter than the length of time we have considered to be appropriate in other cases.[11]

---

[10] This court can determine whether an out-of-court identification meets the second *Brathwaite* prong without first determining whether it satisfies the first prong. *See Coleman v. Quarterman*, 456 F.3d 537, 544 (5th Cir. 2006).

[11] *See, e.g., Coleman*, 456 F.3d at 544 (allowing identification under this prong nine days

12

These four factors confirm that there is not a substantial likelihood of misidentification from Broadwater's mug shot viewing. Hines cannot rely on the third factor––the accuracy of the witness's prior description of the criminal––because there is no testimony regarding Broadwater's description of Hines before his mug shot search. Thus, Broadwater's identification passes not just one but both of the *Brathwaite* prongs, and Hines's motion to suppress was therefore properly denied.

Finally, Hines argues that the court erred when it admitted evidence about his prior drug arrests under Federal Rule of Evidence 404(b). "This court reviews a district court's decision to admit Rule 404(b) evidence in a criminal case under a heightened abuse-of-discretion standard." *United States v. Mitchell*, 484 F.3d 762, 774 (5th Cir.) (citation omitted), *cert. denied*, 128 S. Ct. 297 (2007), *and cert. denied*, 128 S. Ct. 869 (2008). If this court were to find error, it would review for harmless error. *Id.* (citation omitted). Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

FED. R. EVID. 404(b).

The government offered testimony about Hines's prior drug arrests over Hines's objection. Hines also offered to stipulate to the arrests, but the government declined.[12] Three different police officers testified about arresting Hines for

after initial viewing of defendant).

[12] Hines admits, correctly, that the government does not have to accept the stipulation.

13

crack possession. "This Court employs a two-prong test to examine the admissibility of extrinsic evidence under Rule 404(b). First, the Court must determine whether the extrinsic evidence is relevant to an issue other than the defendant's character . . . . Second the evidence must possess probative value that is not substantially outweighed by its undue prejudice . . . ." *Morgan*, 505 F.3d at 339-40 (citations and internal quotations omitted).

The government argues that the evidence was relevant for the first prong because it was admitted to show identity and intent rather than character. Intent is material to drug possession and trafficking prosecutions, *see United States v. Thomas*, 348 F.3d 78, 86 (5th Cir. 2003), and intent can serve as grounds for rule 404(b) evidence, *see Morgan*, 505 F.3d at 339. Also, "[w]here the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses." *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc). Hines was arrested with crack and charged with intent to distribute that crack; intent is, by definition, material to this charge and makes the evidence relevant under rule 404(b).

The government also contends that the evidence was needed to prove Hines's identity. During trial, Hines's counsel noted that Broadwater was the only officer who could identify Hines selling drugs, suggesting that Hines's identity was in question. Thus, the arrests were also relevant to confirm identity.

Because the evidence was relevant for identity and intent, it is admissible

---

*See United States v. Spletzer*, 535 F.2d 950, 955 (5th Cir. 1976) ("It is true that as a general rule a party may not preclude his adversary's proof by an admission or offer to stipulate."). "Nonetheless, this principle, like all rules of evidence, is subject to the provision that where the probative value of relevant evidence is substantially outweighed by its potential for unfair prejudice, it should be excluded." *Id.* at 955-56.

under rule 404(b) so long as it "possesses probative value that is not substantially outweighed by its undue prejudice." *Morgan*, 505 F.3d at 339-40. The court did not abuse its discretion in finding that the testimony's probative value was not substantially outweighed by its prejudicial impact.

First, as rule 404(b)'s language plainly states, the prejudice must *substantially* outweigh the probative value; this is a difficult standard to overcome. Next, the court put a limiting instruction on the testimony. Limiting instructions, where applied contemporaneously and properly, should, except in the most extreme instances, prevent the prejudice of testimony from substantially outweighing the probative value of the statement.[13] Finally, the offenses Hines was charged with were more serious than the drug arrests the officers testified about; this again limits the prejudicial impact of the rule 404(b) evidence.[14] The confluence of these factors, together with the probative value of the intent and identity evidence, mandates that this testimony be admitted under rule 404(b).

AFFIRMED.

---

[13] *See United States v. Adair*, 436 F.3d 520, 527 (5th Cir. 2006) ("We also conclude that Agent Tyson's testimony had little opportunity of creating unfair prejudice because . . . the district court mitigated any prejudicial effect by giving the jury a limiting instruction."); *Thomas*, 348 F.3d at 86 (stating that prejudicial impact is reduced by limiting statement).

[14] *See id.*