**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

———————

No. 17-40207

———————

United States Court of Appeals
Fifth Circuit

**FILED**
September 28, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

        Plaintiff - Appellee

v.

ZERRICK EDWARD WALKER, also known as Roscoe; KODY DWAYNE ARDOIN,

        Defendants - Appellants

--------------------

Consolidated w/ 17-41016

UNITED STATES OF AMERICA,

        Plaintiff - Appellee

v.

KRISTOPHER GEORGE ARDOIN, also known as Football,

        Defendant - Appellant

———————

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 1:15-CR-119-6
USDC No. 1:15-CR-119-2

———————

No. 17-40207
c/w No. 17-41016

Before SMITH, CLEMENT, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:*

For about two decades, the home at 1107 Avenue A in Beaumont was the headquarters of a family-operated business.  Crack cocaine was the product. The operation included the mother and father, their five sons, several cousins, and other family friends.  Local police would occasionally make arrests, and some family members served time on state charges, but others would quickly pick up the slack and continue the operation.  Taking a new approach, a federal investigation led to a grand jury indictment of thirteen people for conspiring to distribute 280 grams or more of crack cocaine between January 2006 and May 2016.  Six were also charged with conspiring to possess firearms in furtherance of the drug trafficking.

Three defendants went to trial: two of the sons, Kristopher and Kody Ardoin, and one of the cousins, Zerrick Walker.  All three faced the drug conspiracy charge.  Only Kristopher was charged with the firearm conspiracy. The jury found them guilty on all counts, attributing 280 grams or more of crack to both the drug conspiracy and each defendant individually.  The district court sentenced Kody to 27 years, Walker to a mandatory minimum of 20 years, and Kristopher to concurrent sentences of mandatory life for the drug offense and 20 years for the firearms conviction.  The defendants all challenge the sufficiency of the evidence presented at trial, and Kody and Walker challenge their sentences.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-40207
c/w No. 17-41016

I.

Each defendant properly moved for a judgment of acquittal, so we review the sufficiency of the evidence de novo. *United States v. Fuchs*, 467 F.3d 889, 904 (5th Cir. 2006). Challenges to the sufficiency of the evidence are reviewed by taking all evidence—including credibility choices and reasonable inferences—in the light most favorable to the verdict. *United States v. Lewis*, 774 F.3d 837, 841 (5th Cir. 2014).

A.

For the drug convictions, the defendants do not dispute the jury's finding that they joined a conspiracy to traffic crack cocaine. They limit their appeal to the jury's holding them responsible for 280 grams or more. That finding had significant effect. It required sentences on the drug counts of at least 10 years for Kody, 20 years for Walker who had a prior drug felony, and life for Kristopher who had two prior drug felonies. 21 U.S.C. § 841(b)(1)(A). Drug quantity that results in a mandatory minimum must be proven beyond a reasonable doubt. *See Alleyne v. United States*, 570 U.S. 99, 108 (2013); *United States v. Daniels*, 723 F.3d 562, 570 (5th Cir. 2013). In this circuit, the defendant's liability is limited to the quantity of drugs with which he was directly involved or that was reasonably foreseeable to him.[1] *United States v. Haines*, 803 F.3d 713, 741–42 (5th Cir. 2015).

Defendants argue that quantity was not proven because police did not seize 280 grams. But the government need not seize the actual amount charged to meet its burden. That is especially true here as all parties acknowledge that 1107 Avenue A operated as a site of persistent drug

---

[1] Most circuits take this individualized approach, while a few require only that the government prove that the whole conspiracy trafficked in the charged quantity. *See United States v. Stoddard*, 892 F.3d 1203, 1220 (D.C. Cir. 2018) (recognizing split).

No. 17-40207
c/w No. 17-41016

transactions for nearly two decades.  Compare that to *Daniels*, in which the evidence was insufficient because the government seized only 1.535 kilograms of the 5 kilograms charged and provided no testimony about the quantity sold to other customers.  723 F.3d at 571.  Testimony can support the verdict if it demonstrates that the amount of drugs attributed to the defendant meets the statutory threshold.  *See, e.g., United States v. Wallace*, 759 F.3d 486, 492–93 (5th Cir. 2014); *United States v. Hinojosa*, 749 F.3d 407, 415 (5th Cir. 2014).  The jury can find a drug quantity by extrapolating from the testimony.  *Cf. United States v. Valdez*, 453 F.3d 252, 267 (5th Cir. 2006) (allowing extrapolation when a court acts as the factfinder in assessing drug quantity under the Sentencing Guidelines).  So, if a witness testifies that he bought a gram of crack each week for a year, the jury can do the basic math and conclude that the defendant sold about 50 grams.  That type of inference goes a long way toward supporting these verdicts.

(1) *Evidence about the conspiracy generally.*  Numerous people in the community told police about buying crack at 1107 Avenue A.  A constant stream of people entered and exited the house, perhaps as many as 15 an hour, and the two-block surrounding area received hundreds of disturbance calls.  Police found crack in the house (among other drugs and paraphernalia) while executing four different search warrants, seizing 151.6 grams in the investigation.  One witness bought crack from each of the defendants between 20–50 times after he began using in 2013.

(2) *Evidence specific to Kristopher.*  Police witnessed Kristopher openly engaging in hand-to-hand drug sales.  Kristopher was present when police found crack inside 1107 Avenue A while executing two different warrants.  After an arrest, Kristopher had to be taken to the hospital because he swallowed 10 crack rocks, presumably to hide them.  On another occasion,

4

Kristopher tossed away a bag of crack as he attempted to escape police on foot after a car wreck; crack was in the wrecked car, too.

*(3) Evidence specific to Kody.*  Witnesses also observed Kody repeatedly engaging in hand-to-hand drug transactions.  He was present when police found crack during three searches of 1107 Avenue A.  When police found crack after searching another house a block away, Kody was again at the scene.  After one arrest, Kody informed an officer that he had hidden crack in his anal cavity; when recovered it weighed about 5.5 grams.  A customer said he had observed Kody with as much as 28 grams of crack cocaine on one occasion.  Another explained that Kody "rented" his car in exchange for crack cocaine for five months, giving him about an ounce a week (about 28.3 grams), an amount Kody later told him was worth more than $20,000.  This witness noted that he sometimes rode with Kody and Walker as they sold drugs from his car.

*(4) Evidence specific to Walker.*  The quantity question is closer for Walker because he was in prison for most of the conspiracy's charged timeframe—2006 to 2015.  But after a traffic stop of Walker, when police found him with two of the scales that are a common tool of drug traffickers, he admitted that he had sold crack cocaine in 2006 before going to prison later that year.  He joked that, both before and after his prison term, even Ray Charles could see the drug operation in the house.  Walker also admitted that he returned to 1107 Avenue A just two weeks after his release and resumed selling crack, though he claimed it was for only a week.  He said that during that week he sold about an eighth-ounce to a quarter-ounce a day (about 3.5– 7 grams per day).  Walker was present during two searches when officers found powder or crack cocaine.  Police also found about seven grams of crack during a consensual search at the apartment of Walker's girlfriend, and found more during two searches of 1107 Avenue A when Walker was present.

No. 17-40207
c/w No. 17-41016

The following table conservatively estimates the drug quantity that could be attributed to each defendant. It does not include the high-level of foot traffic and drug activity at 1107 Avenue A, though as we have explained the jury could reasonably extrapolate from that testimony in assessing drug quantity. The chart also does not include several times when crack cocaine was found but quantity was not determined. It includes only testified drug quantities for the defendants who could have reasonably foreseen the drug trafficking event, excluding Walker from events during the period of his imprisonment and any amount that may have been seized before his release. We are not saying these are the full or actual amounts attributable to each defendant; the table just demonstrates the ease with which a jury could attribute 280 grams or more to each.

|  | Kristopher | Kody | Walker |
|---|---|---|---|
| **Seized & Tested Crack Cocaine** | 151.6g | 151.6g |  |
| **Kristopher's 2010 Arrest[2]** | 3.9g | 3.9g |  |
| **Kody's Car Stop** | 5.5g | 5.5g |  |
| **Broussard's testimony[3]** | 63g | 63g | 63g |
| **Roberson's testimony[4]** | 255g | 255g | 255g |
| **Walker's admissions** | 24g | 24g | 24g |
| **Total** | 503g | 503g | 342g |

---

[2] Assuming the size of the crack "rocks" were about the same as the ones found after Kody's arrest.

[3] Assuming 20 sales of one-sixteenth of an ounce—half the weight that counsel disputed was typical at oral argument—plus the 28 grams Broussard saw Kody possess.

[4] Assuming that Kody (with Walker occasionally delivering) "rented" Roberson's car for 9 weeks, which is about two months. Ignores the unspecified amount of dealing that he observed.

6

No. 17-40207
c/w No. 17-41016

The jury reasonably determined that all three defendants were involved with at least 280 grams of crack cocaine.

### B.

As the district court observed, the evidence was weaker for the gun conspiracy charge against Kristopher.[5] We have never addressed the elements of a conspiracy to possess a firearm in furtherance of a drug trafficking crime. 18 U.S.C. § 924(o). But as with other conspiracy crimes that lack an overt act requirement, the government needed to prove 1) an agreement to commit the crime; 2) the defendant's knowledge of the agreement; and 3) his voluntary participation in the agreement. *United States v. Vargas-Ocampo*, 747 F.3d 299, 303 (5th Cir. 2014) (en banc); *see also United States v. Isnadin*, 742 F.3d 1278, 1307 (11th Cir. 2014) (describing similar elements for 18 U.S.C. § 924(o)).

The easy part for the government was proving that there was *a* conspiracy to possess guns in furtherance of the drug dealing. Police found a 20-gauge shotgun under 1107 Avenue A, the drug operation's headquarters. Next door, where Kristopher's brother lived, police opened a safe with crack and two guns inside. Given the pervasiveness of the drug trafficking at these locations where the guns were found, no imagination is needed to deduce that the guns were, as they so often are, a tool of the drug trade. So ample evidence showed that at least some of the drug dealers also conspired to possess guns as protection for their crack business.

The tougher question is whether the evidence allowed the jury to find that Kristopher knew about and joined that conspiracy. An agreement to join a conspiracy need not, and rarely is, a formal one. *United States v. Freeman*,

---

[5] Given that we just affirmed the drug conviction that requires a life sentence for Kristopher, our decision on the gun charge likely has no practical effect on his sentence. We nonetheless still have a duty to consider this challenge to the separate conviction.

No. 17-40207
c/w No. 17-41016

434 F.3d 369, 376 (5th Cir. 2005).  A defendant's involvement in a conspiracy can be inferred from conduct and circumstances.  *United States v. Grant*, 683 F.3d 639, 643 (5th Cir. 2012).  The safe—the most damning evidence of the gun conspiracy—was found after Kristopher had already been in jail for months. The government emphasizes a jailhouse call in which Kristopher tells the woman on the other end to have "Boonie" give her a firearm.  Standing alone, that discussion is too vague to place Kristopher in the gun conspiracy.  But it does reveal his general awareness that his associates possessed firearms and that he had control even over guns he did not possess.  Kristopher's general involvement with guns can be tied to the firearms conspiracy based on his presence at two locations where both drugs and guns or ammunition were found.  After police responded to a "shots fired" call involving 1107 Avenue A, they found Kristopher in possession of crack.  Corroborating the call, police also found a shotgun under Kristopher's residence.  During a later search of the same residence, police found nine-millimeter bullets and a nine-millimeter magazine, as well as crack.  Kristopher was again present.  Where there are bullets, it's fair to infer that a gun is nearby.

Although it is a close call,[6] there is just enough tying Kristopher to guns and drugs to support the jury's view that he was part of the conspiracy to possess firearms to protect the drugs and cash regularly kept at the headquarters of his family's crack operation.

---

[6] There was a more straightforward path to finding Kristopher liable for a gun offense. His involvement in the drug conspiracy made him liable for any foreseeable substantive firearm offense that furthered the drug trafficking.  *See Pinkerton v. United States*, 328 U.S. 640, 647–48 (1946); *United States v. Gonzales*, 841 F.3d 339, 351–52 (5th Cir. 2016) (finding defendant liable under *Pinkerton* for murder committed to further a drug conspiracy).  But the government sought to hold Kristopher liable for a separate firearm conspiracy, not for a substantive firearm offense.

No. 17-40207
c/w No. 17-41016

II.

We next address the sentencing issues that Kody and Walker raise.

A.

Kody disputes the 4.88 kilograms of crack cocaine the district court attributed to him in calculating his Guidelines range. The sentencing judge's assessment of the drug quantity reasonably foreseeable to a defendant is reviewed for clear error. *United States v. Alaniz*, 726 F.3d 586, 618 (5th Cir. 2013).

The Presentence Report attributed 4.92 kilograms of crack cocaine to Kody based on witness testimony, traffic stops, officer surveillance, and search warrants. With two unremarkable exceptions, the report and the trial evidence present identical information. The judge relied on the PSR and attributed the slightly smaller amount to Kody.

Kody first argues this sentencing determination is at odds with the jury's attributing exactly 280 grams to him. This ignores the words "or more" in the question the jury answered.

He next argues that the judge attributed at least 2.8 kilograms of crack cocaine to him based on only "nebulous" officer surveillance operations. But the drug quantity derived from surveillance was based on the trial testimony of police officers, in particular one officer who saw 10–15 transactions per hour at 1107 Avenue A during his biweekly observations over five years. This testimony was sufficiently reliable to support the court's drug quantity finding. *See Valdez*, 453 F.3d at 267. We find no error in Kody's sentence.

B.

Walker contends that the district court improperly used a 2007 state drug conviction to enhance his sentence to a 20-year minimum. That enhancement is triggered if the district court finds that the defendant

No. 17-40207
c/w No. 17-41016

committed the current offense after a prior felony drug conviction became final. 21 U.S.C. § 841(b)(1)(A).  Walker argues that the 2007 conviction was part of the drug conspiracy charged in this case, so it should not be the basis for the enhanced mandatory minimum.  Walker did not raise this objection in the trial court, so plain error review applies. *United States v. Bishop*, 603 F.3d 279, 280 (5th Cir. 2010).

The district court did not err, even if Walker is correct that the district court viewed the 2007 conviction as part of the charged federal conspiracy.  We have held that an earlier conviction arising from the same conspiracy can be used to enhance the statutory minimum. *United States v. Moody*, 564 F.3d 754, 759 (5th Cir. 2009).  *Moody* noted that the purpose of mandatory minimums is to target recidivism, making it more appropriate to focus on the degree of criminal activity after a conviction rather than when the conspiracy began. *Id.*  The district court correctly applied the enhancement.

Because Walker was properly sentenced to a statutory minimum of 20 years, we need not reach his objections to the Guidelines calculation as it did not impact his sentence.[7]

AFFIRMED.

---

[7] Walker also raises an ineffective assistance of counsel claim.  This is not the rare case when ineffective assistance of counsel should be considered on direct appeal. *United States v. London,* 568 F.3d 553, 562 (5th Cir. 2009).